(87 South. 858)

## WESTERN UNION TELEGRAPH CO. v. BEASLEY. (6 Div. 115.)

(Supreme Court of Alabama. Dec. 16, 1920.)

1. Evidence ⚖➡10(2)—Judicial knowledge taken as to location of sending and receiving point of telegram.

In an action for delay in delivery of death message involving issue as to whether the message was an intrastate or an interstate message, the court will take judicial notice of the physical location of the sending point as situated in relation to the receiving point.

2. States ⚖➡4—When state law must yield to federal law.

If the federal law in its chosen field of operation will be frustrated, and its provisions refused their natural effect by the state law, the state law must yield to the superior authority of the federal law within the sphere of its delegated and assumed authority, and, if the state law has such direct and incidental effect on the enforcement or the abeyance of the federal law, the state law can have no validity.

3. Commerce ⚖➡28 — Transmission of telegram between two points within the state by route through other state held "interstate commerce."

The transmission of a telegram from one point in the state to another point in the state by a route taking it outside of the state held interstate commerce within the Carmack Amendment (U. S. Comp. St. §§ 8604a, 8604aa), and Act June 18, 1910, § 7, and not intrastate commerce, where the message could not have been transmitted wholly within the state without a physical change in the arrangement of the system of wires and the additional services of another operator, so that the rule of damage in action for negligent delay in delivery was the federal, and not the state, rule.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

Appeal from Circuit Court, Walker County; J. J. Curtis, Judge.

Action by W. H. Beasley against the Western Union Telegraph Company. Judgment for the plaintiff, and the defendant appeals. Transferred from Court of Appeals under section 6, Acts 1911, p. 449. Reversed and remanded.

The counts of the complaint are as follows:

Count I. Plaintiff claims of the defendant the sum of $1,500 damages for that heretofore, on. to wit, April 8, 1918, defendant was engaged in receiving, transmitting, and delivering messages by wire or electricity from and between Oakman, Walker county, Ala., and Carbon Hill, Walker county, Ala.; that on, to wit, said date plaintiff through or by his agent delivered or caused to be delivered to the authorized agent of defendant at Oakman, Ala., and paid said agent for the following message to be trans-mitted and delivered, immediately to plaintiff, W. H. Beasley, at Carbon Hill, Ala., to wit: "Oakman, Ala. 9:40 a. m. April 8th, 1918. W. H. Beasley, Carbon Hill, Ala. Mother is dying; come at once. P. E. Day."

Plaintiff avers that his said mother had been sick, and that he had agreed with the said P. E. Day that, in the event said mother got worse or became dangerously ill, he was to be notified by telegram; that his said mother did become dangerously ill, and the said telegram was delivered to the said agent for transmission and immediate delivery to plaintiff at Carbon Hill, Ala.

Plaintiff avers further that the said telegram was not transmitted and delivered immediately, as defendant agreed to, through its authorized agent or servants; that plaintiff did not receive the said telegram until some time during the next day, April 9, 1918, and too late to reach his said mother before she died, and not in time to be present at the burial of his said mother; that plaintiff, as a proximate consequence thereof, spent, to wit, $1 in telephoning concerning his said mother's condition; that he lost much time; that he suffered much mental pain and anguish in not seeing his said mother and in not being present at the said funeral exercises.

Plaintiff avers that he suffered the said damages on account and as a proximate consequence of the negligence of the defendant or its agents, servants, or servant, while acting within the line of their duty or the scope of their authority as such in that they negligently failed to transmit and deliver immediately said telegram, as they agreed to do.

Count II. Plaintiff claims of the defendant the sum of $1,500 damages for that heretofore, on, to wit, April 8, 1918, defendant was engaged in transmitting and delivering messages by means of wire or electricity between Oakman, Ala., and Carbon Hill, Ala.; that on said date P. E. Day, at the request of plaintiff, delivered or caused to be delivered, to defendant or its authorized agent at Oakman, Ala., the telegram set out in count 1 of this complaint, said message to be promptly transmitted and delivered to plaintiff at Carbon Hill, Ala.

Plaintiff avers that defendant, or its authorized agents or servants, while acting within the line of their duty and the scope of their authority, as such agents or servants, negligently failed to promptly transmit and deliver said telegram as it was their duty to do, and as a proximate consequence thereof plaintiff failed to reach his mother before she died, and failed to be present at the funeral services; that, had said message been promptly transmitted and delivered to plaintiff, he could have and would have been present at the said funeral services of his said mother and would have seen her before she was buried; that as a proximate consequence of said negligence plaintiff was caused to spend money in telephoning about the death and burial of his said mother. to wit, 50 cents, which said sum he hereby claims of the defendant; that he suffered much mental pain and anguish in not seeing his mother and being present at the said funeral services, for all of which plaintiff claims and sues to recover of this defendant.

---

Johnston & Cocke, of Birmingham, A. F. Fite, of Jasper, and Francis R. Stark, of New York City, for appellant.

In interstate messages, such as the one in the instant case, damages for mental suffering are not recoverable. 198 Ala. 682, 73 South. 973; 200 Ala. 65, 75 South. 393. The count is demurrable if ex delicto (as are the counts here), where it claims for mental anguish, but fails to show any actionable injury or loss to the person, reputation, or estate of the plaintiff. 126 Ala. 105, 27 South. 779; 132 Ala. 535, 31 South. 607; 138 Ala. 484, 35 South. 468; 139 Ala. 652, 36 South. 773; 161 Ala. 231, 50 South. 87; 15 Ala. App. 230, 73 South. 120. A count stating an agreement to deliver, but failing to show any consideration for the undertaking, states no cause of action. 134 Ala. 269, 32 South. 722; 169 Ala. 109, 53 South. 205, Ann. Cas. 1912B, 512; 14 Ala. App. 295, 70 South. 12. The court erred in declining to instruct the jury that the plaintiff was not entitled to recover damages for mental anguish. 187 U. S. 617, 23 Sup. Ct. 214, 47 L. Ed. 333; 91 S. E. 157; 120 Va. 413, 91 S. E. 154, Ann. Cas. 1918C, 1036; 124 Va. 730, 98 S. E. 645; 174 Ky. 463, 192 S. W. 700, L. R. A. 1917D, 1105; 199 Mo. App. 624, 204 S. W. 818; 62 Okl. 160, 162 Pac. 708; 174 N. C. 97, 93 S. E. 467, L. R. A. 1918A, 803.

J. M. Pennington, of Jasper, and W. T. McElroy, of Carbon Hill, for appellee.

The counts were not subject to the demurrer, they being for breach of contract and not ex delicto. 3 Ala. App. 264, 56 South. 854; 139 Ala. 652, 36 South. 773; 153 Ala. 310, 45 South. 73; 169 Ala. 99, 53 South. 97. Nominal damages were recoverable, and therefore damages for mental anguish may be added. 3 Ala. App. 264, 56 South. 854; 93 Ala. 32, 9 South. 414, 30 Am. St. Rep. 23. It matters not who paid for the message. 183 Ala. 457, 62 South. 821. The message was not an interstate message. W. U. Tel. v. Glover, 17 Ala. App. 374, 86 South. 154.

THOMAS, J. The action was for damages instituted by W. H. Beasley against the Western Union Telegraph Company for failure in due transmission and delivery of a message. Submission was had on counts 1 and 2, to which defendant replied "Not guilty," and by a denial of "all the allegations of each of said counts."

The evidence for plaintiff is as follows: That his half-brother, P. E. Day, lived with plaintiff's mother at Oakman, Ala., at the time of her death and prior thereto; that plaintiff had agreed with said Day that, in event she "got worse, he [Day] would telegraph plaintiff"; that she became dangerously ill about April 8, 1918, and said Day sent, or caused to be sent, a telegram giving this information to plaintiff, which was not promptly received; that about 9:40 a. m. said Day gave or caused the telegram to be given the agent at Oakman, who acted for defendant company in sending the message to W. H. Beasley at Carbon Hill, Ala., and gave him 75 cents for sending the message; that plaintiff's mother died about 8 o'clock p. m. of the day the message was attempted to be transmitted; that plaintiff lived about four miles from Carbon Hill when his mother died; that on April 8th plaintiff as usual carried the mail on a rural route from Carbon Hill, spent the night at his home, and the next morning at 7 o'clock was at Carbon Hill where he remained 30 minutes before starting out with the mail, returning about 2:30 p. m., staying from 30 to 50 minutes; that after he returned that evening plaintiff made inquiry at the telegraph office and was told there was no message for him; that he returned to the post office and inquired if the message had been sent there, and was informed that they "knew nothing about it"; that plaintiff did not receive the telegram until about 2:30 p. m. The telegram introduced in evidence, hereinafter set out, was contained in an envelope addressed to "W. P. Beasley, City." Plaintiff further testified that he was prevented from attending his mother's funeral for the reason that, after receiving the telegram, he learned by phone that his mother, having died about 8 o'clock p. m. on the 8th of April, was being buried at the time of his inquiry; that he could have gone from Carbon Hill to Oakman by private conveyance in about three hours, and by train leaving Carbon Hill at 3 o'clock p. m. and arriving at Oakman about 7 o'clock the same night; that the two points were about 15 miles distant through the country.

The defendant's evidence was that the original message filed with defendant's operator at Oakman, Ala., at 9:40 a. m., April 8, 1918, by W. H. Gregory at the request of P. E. Day, was transmitted by said operator through Birmingham, Ala., to Nashville, Tenn., the latter being the nearest relay point; that the message was received at Birmingham at 10:05 a. m. on the day received at Oakman, and transmitted by the Birmingham operator to the telegraph office at Nashville, Tenn., at 10:25 a. m. on the same day. From Nashville the message was relayed through the telegraph office of defendant at Memphis, Tenn., and received at 10:40 a. m. on the day it was filed at Oakman, and was transmitted to Carbon Hill; that there was a delay in getting the message through from Memphis, Tenn., to Carbon Hill, Ala., and it was not sent from Memphis to the receiving point until 2:51 p. m. and received at Carbon Hill at 2:53 p. m. on said April 8th; that as received at Carbon Hill it was addressed to "W. P. Beasley" instead of "W. H. Beasley" as originally sent; that "said message was relayed according to de-

fendant's usual custom and practice at that time, and the route used for the transmission of the message sued on was the route previously adopted and in regular use by the defendant in the course of its business in the transmission of messages filed at Oakman to Carbon Hill"; that "defendant had no telegraphic line or means of direct communication between Oakman and Carbon Hill, and the message could not have been transmitted over defendant's line directly from Oakman to Carbon Hill"; that "the message could not have been sent from Birmingham to Carbon Hill, without cutting the wire in on the Birmingham keyboard for the following reasons: This wire ran through the Birmingham office and through the Carbon Hill office on the date in question, but in order for Birmingham to communicate direct with Carbon Hill or Carbon Hill with Birmingham it would have been necessary for the Birmingham office to cut in this wire on its keyboard and give it an independent key, as the wire was never used for Carbon Hill business except in cases of emergency such as would arise through a storm putting other lines of communication with Carbon Hill out of communication; in other words, an actual physical change would have been necessary in order to make direct communication between Birmingham and Carbon Hill feasible." · The agreed statement of facts further shows of defendant's effort to deliver the message that on its receipt the Carbon Hill operator endeavored to find the addressee, and, failing, delivered the message to the station porter at Carbon Hill with instructions to mail it.

[1] The reasonable inferences from the evidence leave little necessity for recourse to judicial knowledge. Courts will take judicial knowledge of the physical location of the sending point (Oakman) as situated in relation to the receiving point (Carbon Hill); that both are in the county of Walker, state of Alabama, and are not a great distance from Birmingham, Ala., which the evidence shows to have been the first relay station of the defendant to which the message was sent. Did not the evidence show the fact that each of said points was touched by physically connecting telegraph lines over which plaintiff's agent might have transmitted (in manner indicated in agreed statement of facts) the message and by railway lines over which he might have gone to Oakman, · it may be judicial knowledge may be taken of such physical properties or agencies of transmission and transportation. W. U. Tel. Co. v. Robbins, 3 Ala. App. 234, 56 South. 879; Ga. Pac. Ry. Co. v. Gaines, 88 Ala. 377, 7 South. 382; Green & Sons v. Lineville Drug Co., 150 Ala. 112, 43 South. 216, 124 Am. St. Rep. 17; Smitha v. Flournoy's Adm'r, 47 Ala. 345; Waters v. State, 117 Ala. 189, 23 South. 28; Howard v. State, 172 Ala. 402, 55 South. 255, 34 L. R. A. (N.

S.) 990; Webb v. White Eng. Corp., 85 South. 729;[1] 6 Encyc. Dig. Ala. Rep. pp. 30, 31, § 7, and page 41, § 20. The evidence shows that Oakman, Carbon Hill, and Birmingham were at the time telegraph stations on defendant's physical lines of transmission, and that the message was transmitted from Oakman to Birmingham, and from there beyond the confines of the state, without the knowledge or consent of the plaintiff or his agent. We have set out in extenso the evidence of the physical connection of defendant's telegraph lines at Birmingham as extending from Oakman to Carbon Hill.

The contract of the parties, finding expression in the telegram delivered by plaintiff's agent at Oakman for transmission to plaintiff at Carbon Hill, was:

"4/8. To W. H. Beasley, Carbon Hill, Ala. Mother is dying. Come at once. [Signed] P. E. Day. O. K. B. 10:05 A. M."

As transmitted and delivered it was:

"Oakman, Ala., 9:40 A. M. April 8th, 1918. W. P. Beasley, Carbon Hill, Ala. Mother is dying. Come at once. [Signed] P. E. Day. 2:53 P. M."

The envelope was addressed "W. P. Beasley, City." The evidence without dispute shows that plaintiff's initials are "W. H."

Defendant insists: (1) That in order to effect direct telegraphic communication between Birmingham and Carbon Hill and so confine the transmission of messages, originating at Oakman and addressed to persons at Carbon Hill, wholly within the state of Alabama, would require it to make a physical change in the arrangement of its system of wires and their operation in the Birmingham office, which would necessitate the "services of one operator to take care of business passing to or from Carbon Hill through the Birmingham office, which was the nearest relay point for messages originating at or destined to Carbon Hill"; (2) that by exceptions to the court's oral charge and by appropriate written charges requested it invoked the defense that the fact of transmission of the message in suit outside of the state of Alabama for delivery in Alabama in the usual course of the business of the telegraph company imparted to the message the character of interstate commerce, and that plaintiff could not recover damages for mental pain and anguish under the rule of the federal cases. W. U. Tel. Co. v. Hawkins, 198 Ala. 682, 73 South. 973; W. U. Tel. Co. v. Smith, 200 Ala. 65, 75 South. 393; Deavors v. Sou. Ex. Co., 200 Ala. 372, 76 South. 288.

[2] It was said by this court in response to an inquiry from the Court of Appeals (L. & N. v. State, 16 Ala. App. 199, 208, 76 South. 505) that, in determining whether a federal statute has superseded a state law,

[1] 204 Ala. 429.

the entire scope and purpose of the statute in question must be considered; and that which needs to be implied within its statutory scope and intent is of no less force than that which is expressed in the act. When so considered, if the federal statute, in its chosen field of operation, "will be 'frustrated' and its provisions 'refused their natural effect,' the state law must yield to the superior authority of the federal law within the sphere of its delegated and assumed authority"; and, if the state law "has such indirect and incidental effect on the enforcement or the abeyance of such federal statute, the state law can have no validity." Webb v. White Eng. Corp., supra.

The field of operation of the federal amendment to the statute in question is to be found in the act of Congress of June 18, 1910 (36 Stat. 539), "To create a Commerce Court, and to amend the act entitled 'An act to regulate commerce,' approved February fourth, eighteen hundred and eighty-seven, as heretofore amended, and for other purposes." Section 7 thereof is as follows:

"That section 1 of the act entitled 'An act to regulate commerce,' approved February fourth, eighteen hundred and eighty-seven, as heretofore amended, is hereby now amended so as to read as follows: 'Section 1. That the provisions of this act shall apply (1) to any corporation or any person or persons engaged in the transportation of oil or other commodity, except water and except natural or artificial gas, by means of pipe lines, or partly by pipe lines and partly by railroad, or partly by pipe lines and partly by water, and (2) to telegraph, telephone, and cable companies (whether wire or wireless) engaged in sending messages from one state, territory, or district of the United States, to any other state, territory, or district of the United States, or to any foreign country, who shall be considered and held to be common carriers within the meaning and purpose of this act, and (3) to any common carrier or carriers engaged in the transportation of passengers or property wholly by railroad (or partly by railroad and partly by water when both are used under a common control, management, or arrangement for a continuous carriage or shipment), (a) from one state or territory of the United States or the District of Columbia, to any other state or territory of the United States or the District of Columbia, (b) or from one place in a territory to another place in the same territory, or (c) from any place in the United States to an adjacent foreign country, (d) or from any place in the United States through a foreign country to any other place in the United States, and also to the transportation in like manner of property shipped from any place in the United States to a foreign country and carried from such place to a port of transshipment, or (f) shipped from a foreign country to any place in the United States and carried to such place from a port of entry either in the United States or an adjacent foreign country: Provided, however, that the provisions of this act shall not apply (1) to the transportation of passengers or property, or (2) to the receiving, delivering, storage, or handling of property wholly within one state and not shipped to or from a foreign country from or to any state or territory as aforesaid, nor (3) shall they apply to the transmission of messages by telephone, telegraph, or cable wholly within one state and not transmitted to or from a foreign country from or to any state or territory as aforesaid." 36 U. S. Stat. at Large, pt. 1, pp. 539, 544, 545, § 7.

The Carmack Amendment was of date June 29, 1906, 34 U. S. Stat. at Large, 584 (U. S. Comp. St. §§ 8604a, 8604aa).

A casual inspection of the act and the foregoing amendment, together with our cases of W. U. Tel. Co. v. Hawkins, supra, and W. U. Tel. Co. v. Smith, supra, will disclose that the respective contracts declared upon in said cases showed that they were for the transmission of messages from points within the state of Alabama to points in the state of Georgia. The applicability of the federal rule to the contract made within the state was forcefully questioned by Mr. Justice McClellan in the latter case.

[3] It is insisted by appellee that the contract made the basis of suit was prima facie an intrastate message, between two points in the county of Walker, within the state of Alabama. Notwithstanding the contract is unambiguous (Dozier v. Vizard Investment Co., 203 Ala. 421, 83 South. 572; Dowling-Martin Groc. Co. v. Lysle Mill. Co., 203 Ala. 491, 83 South. 486) and for the transmission and delivery of a message between two points within the state of Alabama, a federal question being urged, we look to the whole evidence to ascertain whether, by the act of its transmission through other states, by several relays, under the facts disclosed by the evidence, it was or became an act of interstate commerce.

In the recent decision in Western Union Telegraph Co. v. Speight, 254 U. S. 17, 41 Sup. Ct. 11, 65 L. Ed. —, by the Supreme Court of the United States, it was held that the transmission of a telegram between two points in the same state over a route passing out of the state was none the less interstate, so as to prevent the application of the rule of the local law permitting a suit to recover damages for mental anguish because of a mistake in delivery, although it would have been physically possible to have sent the message over a route lying wholly within the state; the course adopted being more convenient and less expensive for the telegraph company. On the authority of Hanley v. Kansas City Sou. Ry. Co., 187 U. S. 617, 23 Sup. Ct. 214, 47 L. Ed. 333, it is declared that, to ascertain whether the transmission of a telegraph message is interstate commerce, the fact "must be tested by the actual transactions." Kirmeyer v. Kansas, 236 U. S. 568, 35 Sup. Ct. 419, 59 L. Ed. 721. Mr. Justice Holmes said of the facts:

"The message was from Greenville, N. C., to Rosemary, in the same state, and was trans-

mitted from Greenville through Richmond, Va., and Norfolk, to Roanoke Rapids, the delivery point for Rosemary. This seems to have been the route ordinarily used by the company for years, and the company defends on the ground that the message was sent in interstate commerce, and that therefore a suit could not be maintained for mental suffering alone"

—and of the law as applied to the facts:

"We are of opinion that the judge presiding at the trial was right, and that the Supreme Court was wrong. Even if there had been any duty on the part of the telegraph company to confine the transmission to North Carolina, it did not do so. The transmission of a message through two states is interstate commerce as a matter of fact. Hanley v. Kansas City Southern R. Co., 187 U. S. 617, 23 Sup. Ct. 214, 47 L. Ed. 333. The fact must be tested by the actual transaction. Kirmeyer v. Kansas, 236 U. S. 568, 572, 724, 35 Sup. Ct. 419, 59 L. Ed. 721. As the line was arranged and had been arranged for many years, ever since Roanoke Rapids had been an independent office, Richmond was the relay point from Greenville to the latter place. The message went through Weldon and was telegraphed back from Richmond, as Weldon business also was. It would have been possible, physically, to send direct from Weldon, but would have required a rearrangement of the wires and more operators. The course adopted was more convenient and less expensive for the company, and there was nothing to show motives except the facts. As things were, the message was sent in the quickest way."

See Western Union Telegraph Co. v. Speight, supra.

The trial court, in its oral charge and by the refusal of appropriate written charges requested by defendant, was of a contrary opinion, and committed reversible error. The judgment of the circuit court is reversed. and the case is remanded.

Reversed and remanded.

All the Justices concur.