ANTHONY F. BARILE, Plaintiff, *v.* JAMES R. FISHER et al.,
Defendants.

Supreme Court, Special Term, Chautauqua County, November 15, 1949.

*Martin R. Bradley, Jr.,* for defendants.

*Clayton M. Jones, Jr.,* for plaintiff.

HALPERN, J. This is an action to recover damages for the discharge of the plaintiff alleged to have been caused by the defendant union and for his subsequent inability to obtain employment, which is also alleged to be attributable to the acts of the defendant union.

The case is before the court upon a motion made by the defendant to dismiss the complaint for insufficiency on its face under rule 106 of the Rules of Civil Practice or, in the alternative, for dismissal under rule 107 of the Rules of Civil Practice on the ground that the court has no jurisdiction of the subject matter of the action.

The following facts appear from the amended complaint: The plaintiff was employed by the Watson Manufacturing Company of Jamestown, New York, as a shear operator. The Watson Manufacturing Company operated under an open shop, but the contract entered into between the company and the defendant union provided that: "All employees who are or become members of the union shall, as a condition of employment, remain members of the union in good standing for the duration of this contract ".

This contract was entered into prior to the adoption of the Labor Management Relations Act of 1947 (U. S. Code [1946 ed., Supp. II], tit. 29, § 141 *et seq.*) and was in force upon the taking effect of that act. The officers of the defendant union failed to file noncommunist affidavits pursuant to subdivision (h) of section 9 of the National Labor Relations Act as amended by the Labor Management Relations Act of 1947 (U. S. Code [1946 ed., Supp. II], tit. 29, § 159, subd. [h]). Thereupon, the plaintiff ceased to pay dues to the defendant union on the ground that he did not wish to be a member of a union whose officers refused to file noncommunist affidavits and also upon

the ground that the plaintiff could not receive the contemplated consideration for the payment of membership dues, since the union would be disqualified from taking certain proceedings under the Labor Management Relations Act. Thereafter, the plaintiff was expelled from the union for his failure to pay dues and the Watson Manufacturing Company was notified that the plaintiff was no longer in good standing as a member of the union and, pursuant to the terms of the contract, the Watson Manufacturing Company thereupon discharged the plaintiff.

The complaint further alleges that, thereafter, the union caused the plaintiff to be "blacklisted" and prevented him from obtaining employment in other shops in the city of Jamestown. The crux of the plaintiff's complaint appears in paragraph thirteenth, which reads as follows: "13. That by reason of the fact that the plaintiff refused to pay dues for the reasons set forth in paragraph 7 of this complaint, the defendants, above-named, compelled the Watson Manufacturing Company of Jamestown, New York, to discharge said plaintiff, as aforesaid, and on information and belief, further wrongfully interfered with and prevented the hiring of said plaintiff in industrial plants of Jamestown, New York, and caused said plaintiff to be blacklisted by notifying all, or substantially all, CIO, AF of L and independent labor unions, whether operating under an open shop, maintenance of membership shop or closed shop contract, organized in those industrial plants of Jamestown, New York, employing shear operators, that plaintiff had not paid his union dues and had, as a result, been expelled from defendant union and further had been discharged from the Watson Manufacturing Company under defendant union's contract with said company for failure to pay union dues, and then, by procuring, enlisting or otherwise obtaining the cooperation and aid of all aforementioned unions, which cooperation or aid has consisted of threats of refusal to allow their members to work in the same shop with the plaintiff if employed, or threats of refusal to allow their members to help, cooperate or otherwise assist the plaintiff in the performance of his duties if employed, or threats to call a strike if plaintiff were employed, whereby the potential employers of said plaintiff as a shear operator were intimidated and otherwise compelled to refuse said plaintiff employment against their will and inclination even though the services of a shear operator were needed; that thereby the said plaintiff was without employment from on or about the 18th day of December, 1947, to on or about the 24th day of July, 1948, and from on or about the 9th day

of September, 1948, to the date of this complaint; that the plaintiff's weekly wages averaged Sixty-five and no/100 Dollars ($65.00) a week and thereby that the plaintiff has been damaged in the sum of Two Thousand Seven Hundred Thirty-three and no/100 Dollars ($2,733.00)."

The defendant moved to dismiss the complaint upon the ground that it was insufficient upon its face and also upon the ground that the court had no jurisdiction of the subject matter of the action. The second ground urged for dismissal may be readily disposed of. Of course, this court has no jurisdiction to entertain proceedings to remedy alleged unfair labor practices under the National Labor Relations Act. Exclusive jurisdiction with respect to such matters is vested in the National Labor Relations Board. However, the complaint is not based upon alleged violations of the Federal statute, but is based upon common-law tort principles. The fact that the grievance complained of in a common-law tort action may also constitute an unfair labor practice under the Federal statute does not deprive the State courts of jurisdiction over the common-law tort action. The motion for dismissal for lack of jurisdiction is therefore denied.

The motion to dismiss for failure to state facts sufficient to constitute a cause of action at common law presents greater difficulty. The principles of tort law which govern this action are well settled, but their application to the particular set of facts pleaded in the complaint presents a novel question upon which there is no direct precedent in the decisions of the appellate courts of this State.

It is now settled in New York State that any action which intentionally causes injury to another gives rise to tort liability unless the defendant shows social or economic justification for his action. The conflicting views as to the nature of tort liability were reviewed by the Court of Appeals in *Advance Music Corp.* v. *American Tobacco Co.* (296 N. Y. 79, 83–84) and the court there pointed out that the courts of this State were committed to the so-called prima facie tort theory, under which all willful injury is actionable unless the defendant justifies or excuses his conduct.

" In *Skinner & Company* v. *Shew & Company* [1893], (1 Ch. 413, 422) Lord Justice Bowen said, ' At Common Law there was a cause of action whenever one person did damage to another wilfully and intentionally, and without just cause or excuse '. So, in *Aikens* v. *Wisconsin* (195 U. S. 194) the court said: ' It has been considered that, *prima facie,* the intentional infliction

of temporal damage is a cause of action, which, as a matter of substantive law, whatever may be the form of the pleading, requires a justification if the defendant is to escape.' (p. 204, per HOLMES, J.) These broad propositions were approved by Sir FREDERICK POLLOCK as authority for his doctrine that all willful harm is actionable unless the defendant justify or excuse his conduct. (Pollock, The Law of Torts [14th ed.], 17–18.)

" On the other hand, the view that all intentional wrongdoing is prima facie tortious has been rejected by other high authorities who contrariwise maintain that every plaintiff must bring his case under some accepted head of tort liability. * * * So, Mr. P. A. Landon, as editor of the fourteenth edition of Pollock's Law of Torts, says (p. 46): ' The law is to-day, as it has always been, that only that harm which falls within one of the specified categories of wrong-doing entitles the person aggrieved to a legal remedy. The categories of tort (not, of course, the categories of particular torts) are closed.'

" This difference over the general principles of liability in tort was composed for us in *Opera on Tour, Inc.* v. *Weber* (285 N. Y. 348). We there adopted from *Aikens* v. *Wisconsin* (*supra*) the declaration that ' *prima facie,* the intentional infliction of temporal damage is a cause of action, which * * * requires a justification if the defendant is to escape.' " (See, also, *Beardsley* v. *Kilmer,* 236 N. Y. 80; *American Guild of Musical Artists* v. *Petrillo,* 286 N. Y. 226, and *Abrams* v. *Allen,* 297 N. Y. 52.)

" The justification that is required in a case like this must, of course, be one which the law will recognize ". (*Advance Music Corp.* v. *American Tobacco Co., supra,* p. 85.)

After many years of uncertainty and conflicting decisions, it is now well settled that the interest of labor organizations in advancing and protecting their own economic position affords a justification which the law will recognize. The justification of economic self-interest first recognized in the field of business competition is now recognized to be equally applicable to the activities of labor organizations. Thus, it is now well settled, at least in this State, that, apart from statutory restrictions, a union may demand and strike for a closed shop and may engage in other activities designed to strengthen its bargaining position and to improve wages, hours, and working conditions and that it is not liable for incidental damage caused to others as a result of its activities in pursuit of such lawful labor objectives. (*National Protective Assn.* v. *Cumming,* 170 N. Y 315; *Wise Shoe Co.* v. *Lowenthal,* 266 N. Y. 264.)

There can therefore be no complaint in this case with respect to the union's causing the plaintiff's discharge by the Watson Manufacturing Company. The justification for this action appears upon the face of the complaint. As appears from the complaint itself, there was a valid outstanding contract between the defendant union and the company requiring all employees who were members of the union to continue as union members in good standing as a condition of their continued employment. This contract antedated the Labor Management Relations Act of 1947 and it is therefore not affected by its provisions (see Labor Management Relations Act of 1947, § 102; 61 Stat. 152).

However, according to the allegations of paragraph 13 of the complaint, quoted above, the union went far beyond enforcing the maintenance-of-membership provision of its contract. It not only caused the discharge of the plaintiff by the Watson Manufacturing Company, but it took active steps to prevent the plaintiff from obtaining employment in any other unionized plant in which shear operators were employed in the city of Jamestown. The defendant accomplished this, according to the complaint, by enlisting the aid of other unions with which the defendant had no affiliation and inducing them to persuade or coerce their employers to deny employment to the plaintiff.

The question to be ultimately decided in this case is whether there was social or economic justification for this action on the part of the union. It should be borne in mind that the question arises at this stage of the case upon the face of the pleadings. Whether the defendant union did the things charged in the complaint, is a matter to be determined upon the trial. The only question now before the court is whether, upon the face of the complaint, it appears as a matter of law that all the acts charged in the complaint fall within the area of justifiable conduct. (*American Guild of Musical Artists* v. *Petrillo,* 286 N. Y. 226, 231, *supra.*)

The action of the defendant union was not justified unless it served in a lawful manner an economic interest of its own, the advancement of which constituted a lawful labor objective.

" If the acts of these unions have any reasonable connection with wages, hours of employment, health, safety, the right of collective bargaining, or any other condition of employment or for the protection from labor abuses, then the acts are justi- fied * * * [citing cases]. If on the other hand the labor

objective here sought is illegal and not a lawful labor objective, since it has no reasonable connection with wages, hours, health, safety, the right of collective bargaining, or any other condition of employment or for the protection of labor from abuses, then there is no immunity for injury inflicted by a labor union. For such activities labor is not free from legal responsibility. * * * The self-interest of labor, like the self-interest of any other body, receives immunity only for those objectives which have a legitimate and reasonable relation to lawful benefits which the union is seeking. When the labor objectives are illegal, the courts must control, otherwise there are bodies within our midst which are free from the provisions of the Penal Law. When doubt arises whether the contemplated objective is within the legal sphere, or without and so illegal, it is for the courts to determine." (*Opera on Tour, Inc.* v. *Weber,* 285 N. Y. 348, 355–356; certiorari denied 314 U. S. 615.)

The conduct of the defendant union as described in the complaint smacks of revenge rather than of the legitimate protection of the union's economic interests. While it is not explicitly alleged in the complaint, it is reasonably inferable therefrom that the plaintiff claims that the defendant acted out of spite or a desire for revenge rather than any expectation of economic advantage. If this is found to be the case upon the trial, and it is found that the defendant acted out of " disinterested malevolence ", the defendant would be clearly liable for the damage caused to the plaintiff. (*Beardsley* v. *Kilmer,* 236 N. Y. 80, *supra; American Bank & Trust Co.* v. *Federal Reserve Bank,* 256 U. S. 350; *Opera on Tour, Inc.,* v. *Weber, supra,* p. 356; *Nann* v. *Raimist,* 255 N. Y. 307, 319.)

It hardly needs argument to establish that revenge is not a legitimate labor objective (*Dorchy* v. *Kansas,* 272 U. S. 306; *Bakery Drivers Union* v. *Wagshall,* 333 U. S. 437). See *Hunt* v. *Crumboch* (325 U. S. 821) page 826 of majority opinion; and in dissenting opinion of Mr. Justice JACKSON, the following at page 829: " there is no social interest served by union activities which are directed not to the advantage of union members but merely to capricious and retaliatory misuse of the power which unions have simply to impose their will on an employer."

Defendant's counsel argues that the defendant union and the other unions which collaborated with it merely exercised their well-established right to refuse to allow their members to work with nonunion workmen, but this is hardly a fair characterization of the acts here charged. For example, it appears from the complaint that unions which operated under open shop

arrangements were induced by the defendant to coerce their employers to deny employment to the plaintiff. In an open shop, union members are allowed to work with nonunion workmen, but despite this fact, the plaintiff was denied employment. The plaintiff was thus singled out and denied employment which other nonunion men were allowed to obtain.

Furthermore, so far as here appears, in those shops in which the unions operated under union shop contracts or maintenance-of-membership contracts, the plaintiff was denied employment without regard to his willingness to join the union in the shop in which he applied for work. While it appears that the plaintiff was unwilling to continue as a member of the defendant union because of the refusal of its officers to sign noncommunist affidavits, there is nothing to indicate on the face of the pleadings that he was unwilling to join the other Congress of Industrial Organizations, American Federation of Labor or independent unions which had contractual relations with the other employers in the community, to whom the plaintiff applied for employment.

So far as appears from the complaint, the unions which collaborated with the defendant refused to permit the employment of the plaintiff, not upon the ground that he was a nonunion man or that he was unwilling to join one of the collaborating unions, but upon the ground that he had formerly been a member of the defendant union and had withdrawn from it. It may be difficult to believe that these unions collaborated with the defendant union to the extent alleged in the complaint, but it must be borne in mind that we are dealing only with the allegations of the complaint. The complaint on its face presents a picture of the ostracism of the plaintiff as a punishment for his withdrawal from the defendant union.

The singling out of the plaintiff for punishment in the manner alleged seems to me to go beyond the bounds of economic justification. The economic interests of the defendant union were not directly served by the exclusion of the plaintiff from other employment. It is true that this exclusion may have been of indirect value in that the punishment of the plaintiff in this manner may have served to deter other members from withdrawing from the defendant union, but the defendant's interests in this regard were adequately protected without the adoption of such punitive measures. The plaintiff's discharge by the Watson Manufacturing Company adequately served to deter other members from leaving the union.

The method alleged to have been used by the defendant was far too drastic and cannot be recognized as a lawful means of protecting its economic interests. As has been pointed out above, the complaint charges that the defendant union induced other unions, with which it had no affiliation, to bring pressure to bear upon neutral employers, who were not in any way parties to the dispute between the plaintiff and defendant, to cause them to refuse to employ the plaintiff. This was not a lawful means of carrying on the dispute between the plaintiff and defendant. On the contrary, it is analogous to a secondary boycott, which has been repeatedly held to be illegal in this State. (*Auburn Draying Co.* v. *Wardell,* 227 N. Y. 1; *People* v. *Bellows,* 281 N. Y. 67; *Opera on Tour, Inc.* v. *Weber,* 285 N. Y. 348, 356, *supra.*)

The defendant finally argues that the complaint is insufficient because it does not allege explicitly that the defendant acted with malice or with an intention to injure the plaintiff. In view of the allegations of the complaint showing that the plaintiff was singled out for special treatment of a punitive character, the omission of the word "malice" from the complaint is not fatal. The whole complaint is instinct with the charge of malice.

"The law has outgrown its primitive state of formalism when the precise word was the sovereign talisman and every slip was fatal. It takes a broader view today." (CARDOZO, J., in *Wood* v. *Lady Duff-Gordon,* 222 N. Y. 88, 91.)

Upon a motion attacking the sufficiency of the complaint, the plaintiff is entitled to the benefit of every reasonable intendment (*Dyer* v. *Broadway Central Bank,* 252 N. Y. 430) and, construing the complaint liberally in accordance with this rule, I find that the complaint impliedly charges malice in the sense of actual ill will or spite.

In any event, the word "malice" as used in the cases of this type does not require a showing of ill will or spite.

"'Malice * * * in its legal sense means a wrongful act done intentionally without just cause or excuse.'" (*American Guild of Musical Artists* v. *Petrillo,* 286 N. Y. 226, 231, *supra.*)

As has been demonstrated above, the complaint charges the defendant with conduct which goes beyond the limits of social or economic justification and, in this sense, it sufficiently charges malice.

The motion to dismiss the complaint is therefore denied, with leave to defendant to answer within ten days after notice of the entry of the order upon this decision.