64 So.2d 384

RUSSELL v. INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, C. I. O. et al.

8 Div. 697.

Supreme Court of Alabama.

March 13, 1953.

Rehearing Denied April 2, 1953.

618

Horace C. Wilkinson and Wilkinson & Skinner, Birmingham, and Julian Harris and Norman W. Harris, Decatur, for appellant.

Thòs. S. Adair, J. R. Goldthwaite, Jr., and Adair & Goldthwaite, Atlanta, Ga., Harold A. Cranefield, Detroit, Mich., and Sherman B. Powell, Decatur, for appellees.

STAKELY, Justice.

This suit was brought by Paul S. Russell (appellant) against International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, C. I. O., an unincorporated organization, Howard Hovis, Felton Dyer, Ralph Webster and Michael Volk (appellees). The individuals named are residents of the State of Alabama and are members of the union The defendants filed a plea to the jurisdiction to which the plaintiff demurred. The

court overruled the demurrer to the plea and because of this adverse ruling, the plaintiff took a nonsuit and brings this appeal on the record, as authorized by § 819, Title 7, Code of 1940.

The complaint consists of two counts and claims damages of the defendants for unlawfully and maliciously preventing plaintiff from engaging in his employment. Count 1 will appear in the report of the case. Count 2 is similar to count 1, except that it alleges a conspiracy among the defendants in connection with the same matters alleged in count 1.

An examination of the allegations of count 1 will show that the defendants prevented plaintiff from engaging in his employment by (1) actual force and violence, (2) mass picketing which blocked a public street which was the only means of access to the place of employment and (3) threats of personal injury and property damage. The damages claimed are for loss of time from employment, mental anguish and punitive damages.

The defendants' plea to the jurisdiction, which will also appear in the report of the case, is based on the following theories: First, that Section 7 of the Federal National Labor Relations Act, 29 U.S.C.A. § 157, provides that employees shall have the right to self-organization, to form, join or assist labor organizations, to bargain collectively and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities. Second, that Section 8(b)(1) of the Act, 29 U.S.C.A. § 158(b)(1), provides that it shall be an unfair labor practice for a labor organization or its agents to restrain or coerce employees in the exercise of the rights guaranteed in Section 7 of the Act. Third, that the use of force and violence in connection with the picketing alleged in the complaint constituted an unfair labor practice under Section 8(b)(1)(A) of the Act, 29 U.S.C.A. § 158(b)(1)(A), in that it interfered with the rights of employees to work notwithstanding the strike, a right given them by Section 7 of the Act. Fourth, that Section 10 of the Act, 29 U.S.C.A. § 160, conferred jurisdiction upon the National Labor Relations Board to prevent any unfair labor practice listed in Section 8 of the Act.

The allegations of the plea according to the defendants show that the act referred to in the plea gave the National Labor Relations Board exclusive jurisdiction of the controversy alleged in the complaint and deprived any court of jurisdiction of it. The constitutional question is raised that "for the state court to entertain appellant's complaint and grant the relief therein prayed for would be in violation of Article 1, Section 8, Clause 3, of the Constitution of the United States, for the reason that said constitutional provision grants to the Congress of the United States exclusive jurisdiction to regulate commerce between the several states, and Congress having undertaken to regulate said commerce by the National Labor Relations Act, as amended, any action by the state court upon the subject matter therein regulated would be in derogation of the authority granted to, and exercised by, Congress under the said constitutional provision."

The writer feels very much as Justice McClellan felt when he wrote the case of Western Union Telegraph Co. v. Smith, 200 Ala. 65, 75 So. 393. He said in effect that he would prefer that the Supreme Court of the United States express its judgment on the question before committing the Supreme Court of Alabama to a profound change in law from what has been regarded as established law in Alabama. His statement was made in connection with a series of cases, cited by appellees in this case, which this court decided in connection with the Acts of Congress dealing with interstate telegraph messages. At one time the state law had permitted a suit to recover damages for mental anguish because of a mistake in or failure of delivery of an interstate message. When the Supreme Court of the United States held, however, that the Federal enactment ousted the state court of jurisdiction in regard to interstate telegraph messages, this court in a series of decisions held that the decision of the Supreme Court of the United States was controlling, the state court had no jurisdiction and the recoverable damages were controlled by the

Federal Law. Western Union Telegraph Co. v. Beasley, 205 Ala. 115, 87 So. 858; Western Union Telegraph Co. v. Barbour, 206 Ala. 129, 89 So. 299, 17 A.L.R. 103; Western Union Telegraph Co. v. Speight, 254 U.S. 17, 41 S.Ct. 11, 65 L.Ed. 104. In one of those cases where it appeared that the Federal Act had ousted the state court of jurisdiction, it was held for example that where the plaintiff failed to pay for a repeated message, his damages under the Federal Act were limited to the cost of the telegram, unless the failure to transmit correctly was due to wilful misconduct of the company or to its gross negligence. Ex parte Priester, 212 Ala. 271, 102 So. 376.

 Under the concept in this country of liberty and the pursuit of happiness, every man has the right to pursue a lawful occupation. This right is in the nature of a property right and the authorities in this state hold that an action at law lies for any unlawful interference therewith. Bowen v. Morris, 219 Ala. 689, 123 So. 222; Local 204 of Textile Workers Union of America v. Richardson, 245 Ala. 37, 15 So.2d 578; Carter v. Knapp Motor Co., 243 Ala. 600, 11 So.2d 383, 144 A.L.R. 1177. Furthermore any person engaged in a lawful pursuit has the right to pass on the public streets without interference, threats or intimidation. Hardie-Tynes Mfg. Co. v. Cruse, 189 Ala. 66, 66 So. 657; American Steel Foundries v. Tri-City Central Trades Council, 257 U.S. 184, 42 S.Ct. 72, 66 L.Ed. 189, 27 A.L.R. 360. Furthermore it is a criminal offense in Alabama for one to use force, threats or intimidation to prevent another from engaging in a lawful occupation. Code of 1940, Tit. 14, § 57; Code of 1940, Tit. 26, §§ 384, 385, Pocket Part; Hardie-Tynes Mfg. Co. v. Cruse, supra.

There is no mention in the Federal Act whatsoever of the plaintiff's right to recover damages for torts suffered by him when encountering a mass picketing line and yet the State of Alabama in its Constitution has expressly provided in Section 13, "That all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law;

and right and justice shall be administered without sale, denial, or delay."

In Marbury v. Madison, 1 Cranch 137, 2 L.Ed. 60, 69, the Supreme Court of the United States said:

"The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws whenever he receives an injury. One of the first duties of government is to afford that protection. In Great Britain the king himself is sued in the respectful form of a petition, and he never fails to comply with the judgment of his court."

In Janney v. Buell, 55 Ala. 408, this court said:

"It is a fixed principle of the common law, that if a right exists, an appropriate remedy for its enforcement necessarily follows as an incident."

See also Hardie-Tynes Mfg. Co. v. Cruse, 189 Ala. 66, 66 So. 657.

Section 7 of the Federal Act, 29 U.S.C.A. § 157, is:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a)(3)".

Section 8 of the Act, 29 U.S.C.A. § 158, defines unfair labor practices of both employers and labor organizations; subsection (b)(1)(A) is the portion of Section 8 here applicable and is as follows:

"(b) It shall be an unfair labor practice for a labor organization or its agents—(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7 * * *."

In discussing the effect of Section 8 (b) (1)(A) in Sunset Line & Twine Co., 79 NLRB 1487, at 1504, the Board said:

"Under this Section, one of the new statutory provisions in which *union* unfair labor practices are defined and proscribed, the essential elements of a violation are three-fold. There must be (1) restraint or coercion, (2) practiced by a labor organization or its agents, (3) against employees in the exercise of rights guaranteed in Section 7 of the Act.

"In this case the Trial Examiner accepted the General Counsel's premise that the third element is present, namely, the protected right of employees to 'refrain from striking,' that is, to work in the face of a strike.

"We agree that employees enjoy that protected right under the Act, as amended, and that there was interference with its exercise in this case."

What we are saying is that the defendant charged in its plea that the action complained of in the complaint was an unfair labor practice under the Act and to us it appears that the defendants' conduct was an unfair labor practice. The defendant, according to its contention, claims that since it is an unfair labor practice, the National Labor Relations Board has exclusive jurisdiction to deal with the conduct, but it is the position of the plaintiff that while the acts complained of may be an unfair labor practice, they are still civil torts under the common law and the Federal Act gives the plaintiff no remedy for damages for such wrongs suffered by the plaintiff.

Subsection (a) of Section 10 empowers the Board to prevent any person from engaging in any unfair labor practice. Subsection (c) of Section 10 provides, in part, as follows:

"If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this Act: Provided, That where an order directs reinstatement of an employee, back pay may be required of the employer or labor organization, as the case may be, responsible for the discrimination suffered by him: And provided further, That in determining whether a complaint shall issue alleging a violation of section 8(a) (1) or section 8(a) (2), and in deciding such cases, the same regulations and rules of decision shall apply irrespective of whether or not the labor organization affected is affiliated with a labor organization national or international in scope. Such order may further require such person to make reports from time to time showing the extent to which it has complied with the order."

According to our understanding the National Labor Relations Board has consistently held that it does not have jurisdiction to award damages to one situated as the plaintiff in the case at bar for injuries sustained by him from unlawful conduct, such as these defendants are alleged to have committed. Colonial Hardwood Flooring Co., 84 N.L.R.B. 563; United Mine Workers, 92 N.L.R.B. 916. See also Progressive Mine Workers of America v. National Labor Relations Board, 7 Cir., 187 F.2d 298, 307. In other words, it results from the holdings of the board as to its power and jurisdiction that the only action which it could have taken in connection with the alleged acts in this case, was a cease and desist order, with the requirement of posting of notices of the compliance.

So far as we are aware, there are only two instances in which the board may make an order for payment of money from one party to the other: (1) under § 10(c) of the Act, when the Board orders reinstatement with back pay of an employee who has been discharged on account of unfair labor practice defined in § 8(a) (3) and §

8(b) (2) of the Act; (2) when the employer is required to refund to his employees dues withheld from their pay and turned over to an employer dominated union. Virginia Electric & Power Co. v. National Labor Relations Board, 319 U.S. 533, 63 S.Ct. 1214, 87 L.Ed. 1568.

Accordingly since the Board does not have jurisdiction to award damages to the plaintiff for the wrongs alleged in the complaint, if the plea is sustained, the plaintiff has suffered an alleged injury for violation of a recognized right but has no remedy for its redress.

We come now to the test to be applied in determining whether the act deprives state courts of jurisdiction and in this connection we point out again that the act in question does not in express terms deprive any court of jurisdiction and if the matter complained of in the complaint is withdrawn from jurisdiction of state courts, it can only be by implication. The Supreme Court of the United States in Texas & Pacific Railroad Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 353, 51 L.Ed. 553, 9 Ann.Cas. 1075, said:

"As the right to recover, which the court below sustained, was clearly within the principles just stated, and as it is conceded that the act to regulate commerce did not, in so many words, abrogate such right, it follows that the contention that the right was taken away by the act to regulate commerce rests upon the proposition that such result was accomplished by implication. In testing the correctness of this proposition we concede that we must be guided by the principle that repeals by implication are not favored, and, indeed, that a statute will not be construed as taking away a common-law right existing at the date of its enactment, unless that result is imperatively required; that is to say, unless it be found that the pre-existing right is so repugnant to the statute that the survival of such right would in effect deprive the subsequent statute of its efficacy; in other words, render its provisions nugatory."

The Supreme Court of the United States has held that neither the National Labor Relations Act nor the Labor Management Relations Act has deprived the states of their police power to deal with force and violence accompanying strikes in industries affecting interstate commerce. Allen-Bradley Local No. 1111 v. Wisconsin Employment Relations Board, 315 U.S. 740, 62 S.Ct. 820, 86 L.Ed. 1154. The holding in that case may be summarized with the statement that the state order enjoining strikers from engaging in mass picketing, etc., is based on two factors: (1) The order of the state board did not deprive any person of any right granted by the Federal Act and (2) the state action did not interfere with the functions of the Federal Board. See also International Union, U. A. W., A. F. of L., Local 232 v. Wisconsin Employment Relations, 336 U.S. 245, 69 S.Ct. 516, 93 L.Ed. 651; Southern Bus Lines, Inc., v. Amalgamated Ass'n of Street, Electric, Railway & Motor Coach Employees of America, 205 Miss. 354, 38 So.2d 765.

In Faribault Daily News v. International Typographical Union, Minn., 53 N.W.2d 36, 46, there is an analysis of the various decisions of the Supreme Court of the United States. In this case the Minnesota Court said:

"We have thus considered all the decisions of the Supreme Court of the United States directly applicable to the question presented. Citation of these cases forecloses the argument that might otherwise be made that the passage of the comprehensive federal labor relations act removes the entire field of labor relations from state control, except where jurisdiction is specifically granted. The court has definitely stated that the federal act is not a police act, and that in areas where the exercise of police power is called for the state and its courts have jurisdiction. In such a case, congress has not protected the union conduct which the state has forbidden, and the conduct is governed by the state."

The foregoing decision seems to clearly hold that the act now under discussion does not interfere with the traditional sovereignty of a state, which would seem to include the power and duty of providing courts for the redress of injuries to the person and property of its citizens. As was said in Milk Wagon Drivers Union v. Meadowmoor Dairies, 312 U.S. 287, 61 S.Ct. 552, 556, 85 L.Ed. 836:

"We find nothing in the Fourteenth Amendment that prevents a state if it so chooses from placing confidence in a chancellor's decree and compels it to rely exclusively on a policeman's club."

It has been held that the state has a right to prosecute offenders in its criminal courts for infractions of its laws in a labor dispute. Blue v. State, 224 Ind. 394, 67 N.E.2d 377.

We, of course, realize that there is a difference between the action of the state in providing a judicial remedy for the redress of wrongs which fall under the exercise of the police powers of the state and of providing redress to persons for a civil tort as for instance violation of rights by unlawful picketing, for the recovery of damages to which they may be entitled. It seems to follow, however, that where the act does not deprive the state of its police power, it certainly does not deprive the state of its judicial power and, therefore, the right of this plaintiff under the constitution of this state to resort to the courts of the state for the vindication of such of his rights as may have been violated, when no remedy is given in the act for redress from such violation, except a cease and desist order.

It is argued that where the Federal Act takes jurisdiction of the subject matter inadequacies of remedy cannot be considered, since the power lies with Congress to give an adequate remedy. In this connection we refer to Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 580, 94 L.Ed. 795, where it was said:

"Our holding here is not inconsistent with our holding in Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. Moore was dis- charged by the railroad. He could have challenged the validity of his discharge before the Board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. As we there held, the Railway Labor Act does not bar courts from adjudicating such cases. A common-law or statutory action for wrongful discharge differs from any remedy which the Board has power to provide, and does not involve questions of future relations between the railroad and its other employees."

In Steele v. Louisville & Nashville R. Co., 323 U.S. 192, 65 S.Ct. 226, 233, 89 L.Ed. 173, the Supreme Court of the United States said:

"Even though the dispute between the railroad and the petitioner were to be heard by the Adjustment Board, that Board could not give the entire relief here sought. * * *

"Whether or not judicial power might be exerted to require the Adjustment Board to consider individual grievances, as to which we express no opinion, we cannot say that there is an administrative remedy available to petitioner or that resort to such proceedings in order to secure a possible administrative remedy, which is withheld or denied, is prerequisite to relief in equity. * * *

"In the absence of any available administrative remedy, the right here asserted, to a remedy for breach of the statutory duty of the bargaining representative to represent and act for the members of a craft, is of judicial cognizance. That right would be sacrificed or obliterated if it were without the remedy which courts can give for breach of such a duty or obligation and which it is their duty to give in cases in which they have jurisdiction."

See also Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283.

It must be conceded as was noted in Texas & Pacific Railway Co. v. Abilene Cotton Oil Co., supra, that if the action in the state court is inconsistent with or violates a right given by the Federal Act or if the state action interferes with the administrative authority entrusted by Congress to the Board of National Labor Relations, the state action must be stricken down, because it is repugnant to or destroys or impairs the efficiency of the Federal Act. But in the case at bar it does not appear how the prosecution of the present suit can take away any right guaranteed to any person by the Federal Act. The alleged conduct of the defendants was wrongful and in violation of the laws of Alabama. There is no implication in the Federal Act which grants the defendants immunity for such wrongful conduct. As we have undertaken to say, the Federal Act itself shows that the alleged conduct of the defendants was wrongful and we believe that the mere fact that such conduct is an unfair labor practice, does not under the Act deprive the state court of jurisdiction to award damages for such conduct, there being nothing in the Act to deprive the plaintiff of his rights or to give the plaintiff a forum in which such rights can be adjudicated.

■ Neither legislative nor judicial action by the state is prohibited by the Act unless it interferes with the function of the National Labor Relations Board or unless it is repugnant to a right granted by the Federal Act. Bethlehem Steel Co. v. New York State Labor Relations Board, 330 U. S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234; International Union of United Automobile, Aircraft and Agricultural Implement Workers v. O'Brien, 339 U.S. 454, 70 S. Ct. 781, 94 L.Ed. 978; Algoma Plywood & Veneer Co. v. Wisconsin Employment Relations Board, 336 U.S. 301, 69 S.Ct. 584, 93 L.Ed. 691; Hill v. State of Florida, ex rel. Watson, 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782. See also Textile Workers Union v. Arista Mills Co., 4 Cir., 193 F.2d 529, 533. In this last cited case the court said:

"Where, however, substantive rights with respect to such matters as posi-

tions or pay are created by bargaining agreements, there is no reason why the courts may not enforce them even though the breach of contract with regard thereto may constitute also an unfair labor practice within the meaning of the act."

In Masetta v. National Bronze & Aluminum Foundry Co., Ohio App., 107 N.E.2d 243, 249, which was a class suit by a group of employees against the employer for breach of a collective bargaining agreement, it was contended that the Federal Act deprived the court of jurisdiction. The court said:

"We believe that any doubt as to jurisdiction in this case should be resolved in favor of permitting the door, to be open to suits of this character in the state courts, in the absence of a clear and definite contrary declaration by the National Congress, and in the absence of judicial authority to the contrary."

■ As we have undertaken to show, the National Labor Relations Board has no authority to award damages to one who was wronged as alleged in the complaint in the case at bar. Its only authority to prevent such an unfair labor practice is by the issuance of a cease and desist order. It does not appear how the maintenance of this suit by the plaintiff can interfere with that function of the Board. Whatever may be the outcome of this suit, the Board could and can issue a cease and desist order. A judgment in this suit will not be binding on the Board. The essential elements of res adjudicata would be lacking because this suit is for the enforcement of a private right of the plaintiff and the Board's orders are for the enforcement of public rights. As was said in Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 580, 94 L.Ed. 795, "If a court in handling such a case must consider some provision of a collective-bargaining agreement, its interpretation would of course have no binding effect on future interpretations by the Board."

In Barile v. Fisher (Local No. 302, United Electrical, Radio & Machine Work-

ers of America, C. I. O.), 197 Misc. 493, 94 N.Y.S.2d 346, 350, 17 Labor Cases, 76,969, § 65,578, the plaintiff brought suit against a labor organization alleging that it had expelled him by reason of his refusal to pay union dues and had thereby caused him to lose his employment with his employer whose contract with the union contained a maintenance of membership provision, and in addition that the union had maliciously prevented him from obtaining other employment by notifying various other unions of his expulsion. On Motion to dismiss the complaint on the ground that the state court had no jurisdiction, the court said:

"* * * However, the complaint is not based upon alleged violations of the Federal statute, but is based upon common law tort principles. The fact that the grievance complained of in a common law tort action may also constitute an unfair labor practice under the Federal statute does not deprive the state courts of jurisdiction over the common law tort action. The motion for dismissal for lack of jurisdiction is therefore denied."

We do not understand that Ryan v. Simons, 277 App.Div. 1000, 100 N.Y.S.2d 18; Id., 302 N.Y. 742, 98 N.E.2d 707, is contrary to the last mentioned decision, because in the case at bar it cannot be said that the plaintiff must first avail himself of the administrative remedy set up by the Federal Act, because, as we have shown, there is no administrative remedy by which the plaintiff can be allowed damages for the wrongs which he is alleged to have suffered.

With no authoritative holding from the Supreme Court of the United States on the matter now before us, it is our view that the court was in error in overruling the demurrer to the plea to the jurisdiction of the state court. We think the demurrer should have been sustained.

It is, accordingly, our conclusion that the court was in error and the judgment of the lower court is accordingly reversed and the cause is remanded.

Reversed and remanded.

All the Justices concur.