TIMOTHY F. SULLIVAN *vs.* JOHN R. WHITE & SON, INC.

JUNE 18, 1914.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, and Vincent, JJ.

*(1)  Abatement.   Res Adjudicata.   New Action.*

Gen. Laws, 1909, Cap. 284, § 9, provides "If any action, duly commenced within the time limited, and allowed therefor in and by this chapter, shall be abated, or otherwise avoided or defeated by the death of any party thereto or for any matter, or if, after verdict for the plaintiff the judgment shall be arrested, the plaintiff may commence a new action for the same cause, at any time within one year after the abatement or other determination of the original suit as aforesaid."

*Held,* that under the practice in this state, a compulsory nonsuit is not *res adjudicata,* and is not a bar to a new action commenced within the time limited in said section.

*Held,* further, that plaintiff was not barred, by reason of the fact that he brought his exception to the decision of nonsuit and then withdrew his bill of exceptions and caused judgment to be entered upon the nonsuit, since the first action was defeated by the entry of nonsuit against plaintiff's objection and not by his withdrawal of his bill of exceptions, and the entry of judgment upon that decision was the act of the court in accordance with the established procedure.

*(2)  Negligence.   Master and Servant.*

Defendant company was engaged in removing its property from one of its yards and by direction of its superintendent certain secondary electric light wires were disconnected at the meter, leaving two primary wires charged with electricity. The secondary "dead" wires were sold to a junk dealer, who removed them from the building. An employeé of the latter by direc-

tion of a gang "boss" of defendant cut the primary wires so that they lay on the ground near the disconnected secondary wires. Plaintiff, an unskilled laborer, in employ of defendant by direction of the "boss," was told to coil up the wires and coming in contact with the primary wires was injured.

*Held,* that the gang "boss" was a fellow servant with plaintiff, that he had no authority to direct the cutting of the wires and any negligence on his part or knowledge that the wires were upon the ground could not be imputed to defendant.

*Held,* further, that as defendant was bound to know of the dangerous element in the primary wires and that if they were cut and allowed to remain upon the ground they would constitute a source of danger, the case was properly submitted to the jury upon the question whether the superintendent of defendant was on the premises after the wires were cut a sufficient length of time and under such circumstances that if he had been exercising reasonable care he would have known that the wires were on the ground, with the charge of the court that if they found such to be the fact the defendant was charged with constructive notice of the danger to plaintiff and was guilty of negligence in failing to warn him of the danger.

TRESPASS ON THE CASE for negligence. Heard on exceptions of defendant and overruled.

SWEETLAND, J. This is an action of trespass on the case, commenced on January 20th, 1910, to recover damages for personal injuries received by the plaintiff on October 1st, 1906, and alleged to have resulted from the negligence of the defendant.

Under one of the provisions of the statute "Of the Limitations of Actions," in force October 1st, 1906, and now contained in Gen. Laws, 1909, Chapter 284, § 1, "actions for injuries to the person shall be commenced and sued within two years after the cause of action shall accrue and not after." The plaintiff within two years after October 1st, 1906, brought an action against this defendant to recover for the same cause, arising from the same personal injuries alleged in this action. On January 21st, 1909, at a trial of said former action before a justice of the Superior Court sitting with a jury, upon the conclusion of the plaintiff's evidence, on motion of the defendant and against the objection of the plaintiff, the plaintiff was nonsuited by the justice presiding; and on January 19th, 1910, as of January

21st, 1909, a judgment for the defendant for costs was entered in the Superior Court on said decision of nonsuit.    The plaintiff claims that, notwithstanding the above provision of the statute of limitations, he can have his present action against the defendant, commenced within one year after said decision of nonsuit, under Section 9, Chapter 284, Gen. Laws, 1909, which is as follows:    "If any action, duly commenced within the time limited and allowed therefor in and by this chapter, shall be abated or otherwise avoided or defeated by the death of any party thereto, or for any matter, or if, after verdict for the plaintiff, the judgment shall be arrested, the plaintiff may commence a new action for the same cause, at any time within one year after the abatement or other determination of the original suit as aforesaid; and if the cause of action does by law survive, his executor or administrator may, in case of his death, commence said new action within the said one year."

The right of the plaintiff to have his present action was before the Superior Court upon demurrers to defendant's rejoinders and demurrer to the fourth plea.    The Superior Court approved the contention of the plaintiff and sustained said demurrers, to which action of the Superior Court the defendant excepted.    The present action was tried upon its merits before a justice of the Superior Court sitting with a jury and resulted in a verdict for the plaintiff for two thousand dollars.    The plaintiff, claiming that the amount of damages awarded by the verdict was grossly inadequate, duly filed his motion for a new trial upon the question of damages alone.    The justice presiding at the jury trial refused to grant a new trial as the plaintiff requested; but did grant a new trial to be had generally upon all the issues in the case.

The cause is before us upon the defendant's exceptions to the rulings of the Superior Court sustaining plaintiff's demurrers to the rejoinders and to the fourth plea, to the ruling of the justice presiding at the trial denying the defendant's motion to direct a verdict for the defendant at the conclusion of the evidence, and to the decision of said justice granting the plaintiff's motion for a new trial.

The question raised by said demurrers is as to whether the judgment entered upon the decision of nonsuit in the former action is a bar to this suit. The defendant contends that said judgment constitutes *res adjudicata,* was a determination of the action on its merits, and hence, that said former action was not abated or otherwise avoided or defeated, within the meaning of the language of Section 9, Chapter 284, Gen. Laws, 1909. The words "abated," "avoided" and "defeated" as used in said section have been held by this court to refer to a defeat of the plaintiff's action for "any cause or condition external to the plaintiff, operating adversely to him," which does not amount to a determination of such action upon its merits. *Robinson* v. *Merchants' & Miners' Trans. Co.,* 16 R. I. 637; *Taft* v. *Daggett,* 6 R. I. 266; *Pesce* v. *Mondare,* 30 R. I. 247.

We have given careful consideration to the cases to which our attention has been called in the argument and carefully prepared briefs of the defendant's counsel, to his review of the historical development of the voluntary and enforced nonsuit, and to his contentions as to the legal effect of the nonsuit ordered by the court in the former suit between these parties. We find, however, no sufficient reason for overruling the long continued practice in this state and the former decisions of this court that a nonsuit does not constitute an adjudication of a case upon its merits. In *Robinson* v. *Merchants' & Miners' Trans. Co.,* 16 R. I. 637, the court said: "The fact that the plaintiff, in his first action, has been nonsuited by order of the court, did not invalidate the second for whatever the effect of such a nonsuit may be under Section 8, it is well settled that ordinarily a nonsuit, whether enforced or voluntary, is no bar to a subsequent action." The claim of the defendant that this language is mere dictum is entirely without warrant. Although in that case the replication was overruled because the plaintiff had failed therein to make a certain formal allegation, which could be readily supplied by amendment, which admitted allegation had no connection with the important question in the case, the

opinion was conclusive of an essential issue between the parties, *i. e.*, as to the right of the plaintiff to have his action after an involuntary nonsuit entered in his former suit, based on the same cause. In *Robinson* v. *Merchants' and Miners' Trans. Co.* there had been three successive suits between the parties upon the same cause of action. In the first of these an involuntary nonsuit had been entered. The second, subsequently brought, was dismissed for failure of the plaintiff to comply with an order for him to furnish surety for costs; and the third, subsequently brought, was then under consideration. If an involuntary nonsuit granted in the first should be regarded as a determination of that suit on its merits, such nonsuit would bar the third action as well as the second and such holding would render any consideration as to the termination of the second a matter of no consequence. The question then as to the effect of the nonsuit in his first action was vital, in determining as to the plaintiff's right to have his suit then at bar, and the effect of such nonsuit is plainly passed upon in said opinion.

In his brief and argument the defendant's counsel has frequently referred to a portion of the language of the court in *Robinson* v. *Merchants' & Miners' Trans. Co.*, quoted above, as being a qualification of the holding that "it is well settled that ordinarily a nonsuit, whether enforced or voluntary, is no bar to a subsequent action;" and the counsel urges that "the court expressly refused to pass on the question whether the statute includes the termination of a case by such a nonsuit as is involved in the present case." That portion of the court's language referred to is: "whatever the effect of such a nonsuit may be under Section 8." "Section 8" considered in the opinion is identical with Section 9, Chapter 284, Gen. Laws, 1909, now before us. Whatever question the court may have had in mind, which caused the insertion of this clause, the clause plainly was not intended as a qualification of the language that immediately preceded and followed it; and it is not the statement of an express refusal on the part of the court to determine whether or

not an involuntary nonsuit is the adjudication of a case upon its merits. For it plainly follows from the court's language that if the nonsuit in the first action "did not invalidate the second" and if an involuntary nonsuit "is no bar to a subsequent action," then such nonsuit is not a determination of an action upon the merits, which is the point before us. What the court may have intended by the *quere* "whatever the effect of such nonsuit may be under Section 8" is not altogether clear. It does not admit, however, of the construction placed upon it by the defendant. It is possible that the court was speaking of a compulsory nonsuit; and that the clause had reference to the later discussion in the opinion as to the effect of a voluntary abandonment of his case by the plaintiff in depriving him of the remedy given by said Section 8, now Section 9, Chapter 284, Gen. Laws, 1909; and that in such circumstances the plaintiff's action should not be regarded as having been "abated," "avoided" or "defeated" within the meaning of those words as used in the statute. The authority of *Robinson* v. *Merchants' & Miners' Trans. Co.*, cannot be belittled by characterizing the language quoted as dictum; and there is no qualification of the judicial determination that under the practice in this state a nonsuit is not *res adjudicata.* This conclusion was again announced in *Pesce* v. *Mondare*, 30 R. I. 247.

There is no force in the defendant's claim that the plaintiff cannot have the benefit of the provision now contained in Section 9, Chapter 284, Gen. Laws, 1909, because he brought his exception to said decision of nonsuit to this court and then withdrew his bill of exceptions and caused judgment to be entered in the Superior Court upon said nonsuit. Because the plaintiff did not consider it wise to prosecute his bill of exceptions and withdrew it, the former suit cannot be said properly to have been either abated, avoided or defeated by his abandonment of it. That action was defeated by the entry of nonsuit against the plaintiff's objection and not by his withdrawal of his bill of exceptions. The entry of judg-

ment upon the decision was not the plaintiff's act, but that of the court taken in accordance with the procedure prescribed by statute for the entry of judgment after verdict or decision.

The defendant takes nothing by its exception to the rulings of the Superior Court upon said demurrers.

(2)   The defendant excepted to the refusal of the justice presiding to direct a verdict for the defendant at the conclusion of the evidence.   The transcript of the evidence discloses that the defendant is a dealer in coal in the city of Providence; that on October 1st, 1906, it was engaged in removing its personal property from one of its yards on India Street; that, for some years before this day, the defendant had used electricity for light and power in said yard, which electricity for light was supplied to it by the Narragansett Electric Lighting Company over two primary wires, belonging to said lighting company, running from the lighting company's pole on India street over the defendant's premises to one of the defendant's sheds where said wires were attached at a point about twenty or twenty-five feet above the ground and thence ran to a transformer and meter; that from said meter the currents of electricity were carried by secondary wires, belonging to the defendant, to various points about its yard.   Two days before October 1st, 1906, the lighting company, by direction of a Mr. Purves, the defendant's superintendent, disconnected said secondary wires at the meter, thus making the secondary wires "dead" and left only the two primary wires charged with electricity.   Mr. Purves sold said secondary wires to a dealer in junk, who, by his servants, removed the secondary wires from the places where they were attached to the premises of the defendant.   On the morning of the accident some of said secondary wires lay upon the ground near the place where said primary wires were attached to the building of the defendant.   At some time between eight and eight-thirty o'clock on the morning of the accident, an employee of said junk dealer, by direction of one Sencebaugh, an employee of the defendant, cut the two

primary wires so that they lay upon the ground, still charged with electricity, near the disconnected secondary wires which were upon the ground. The plaintiff was an unskilled laborer in the employ of the defendant, and on said day was assisting the work of collecting the personal property of the defendant for removal from said yard under the immediate direction of said Sencebaugh. At about nine-fifteen o'clock A. M., he was told by Sencebaugh to coil up the wires lying upon the ground. The plaintiff testified that he had seen a number of wires there for a day or two and they all looked alike to him; that he coiled up two of them and had begun to coil a third when he received a charge of electricity and was severely injured.

The defendant's motion for the direction of a verdict in its favor was based upon its claim that the evidence failed to disclose any negligence on its part. The contention of the plaintiff was that the defendant was negligent by reason of the action of Sencebaugh, the foreman, in directing that the primary wires be cut, so that they fell upon the ground, in failing to give the plaintiff warning of the dangerous situation, and in directing the plaintiff to work about the wires and to coil them up without notifying him that the primary wires were charged with electricity; the plaintiff also claimed that, in addition to the liability arising from the negligent acts of Sencebaugh, in the circumstances of the case the dangerous wires were lying upon the ground, near where the plaintiff was injured, a sufficient length of time to charge the defendant with constructive notice of their presence there and to render it liable for permitting the plaintiff to work about them without warning him of the peril. The justice presiding held that the defendant was not liable by reason of the conduct of Sencebaugh. We are of the opinion that this ruling was correct. Sencebaugh was simply a foreman, laboring with the plaintiff and one or two other men, and directing them about the work of clearing up the yard, and getting the personal property of the defendant together in preparation for its removal. His position was that

of a gang "boss" and fellow servant with the plaintiff. He had no authority to direct the cutting of the primary wires; he was apparently ignorant of their dangerous character. Any negligence on the part of Sencebaugh cannot be charged to the defendant; nor can his knowledge that the primary wires were upon the ground be imputed to the defendant.

In the circumstances of the case the defendant was bound to know of the dangerous element in the primary wires upon its premises and that if they were cut without shutting off the electricity and allowed to remain upon the ground they would constitute a source of great peril to the plaintiff and his fellow workmen. There was testimony, which however was contradicted, from which the jury might have found that these primary wires were lying upon the ground for about an hour after they were cut and before the plaintiff was injured; and that for a considerable portion of that period Mr. Purves, the superintendent of the defendant, was about said yard and in such a position that he must have seen them and if he had been in the exercise of reasonable care would have known of the peril to the plaintiff. The justice presiding denied the defendant's motion for the direction of a verdict on the ground that there was testimony from which the defendant might be charged with constructive notice of the existence of the dangerous condition, and might be found guilty of negligence in permitting the plaintiff to work in that position without warning him of the danger. The justice submitted the case to the jury upon the question whether Mr. Purves, the defendant's superintendent, was at said yard, between the time when the two primary wires were cut and the accident happened to the plaintiff, a sufficient length of time and under such circumstances, that if he had been exercising reasonable care for the safety of the plaintiff he would have known that the charged wires were on the ground and dangerous to the safety of the plaintiff; and the justice charged the jury that if they found that Mr. Purves was at the yard in such circumstances the defendant should be charged with constructive notice of the danger to the

defendant and guilty of negligence in failing to warn him of such danger. We find no error in the ruling of said justice on the motion for the direction of a verdict.

There is no merit in the defendant's exceptions to the decision of the justice granting a new trial. The plaintiff's injuries were serious and the justice might properly consider the amount of the jury's verdict as inadequate compensation for the plaintiff's damages arising from said injuries. In accordance with the opinion of this court in *Clark* v. *N. Y., N. H. & H. R. R. Co.,* 33 R. I. 83, upon a motion for a new trial on the question of damages alone, the justice should grant to the moving party a new trial to be had generally when, in his judgment it appears that a new trial solely upon the question of damages would be unjust to the other party.

All of the defendant's exceptions are overruled and the case is remitted to the Superior Court for further proceedings.

*Cooney & Cahill,* for plaintiff.

*Gardner, Pirce & Thornley,* for defendant.