FLORENCE SAVARD *vs.* INDUSTRIAL TRADES UNION

OF AMERICA *et al.*

JOSEPHINE PROULX *vs.* SAME.

MARCH 31, 1950.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

498

CONDON, J. These are actions of trespass on the case for unlawful interference with the right of employment. They were tried together in the superior court and a verdict of $2000 was returned for each plaintiff. The defendants moved for a new trial which was denied. Each plaintiff also moved for a new trial solely on damages on the ground that they were inadequate. The trial justice granted each motion unless the defendants consented to an additur of $1508.40 in Florence Savard's case and of $404 in Josephine Proulx's case. Defendants excepted to such rulings and the cases are here on their bills of exceptions containing those exceptions and numerous other exceptions taken during the trial.

Only forty-seven of the ninety exceptions prosecuted here have been briefed and argued, the others having been expressly waived. Defendants have renumbered those forty-seven exceptions in their brief with numbers which do not correspond with those in the bills of exceptions. We do not approve this practice, but since the plaintiffs have followed it in their brief to avoid confusion, as they say, we too shall follow it in our discussion here.

We shall not discuss each exception as many of them do not merit individual treatment. Defendants have recognized that fact and have briefed and argued their exceptions in groups under nine separate points. We shall therefore treat them similarly in a more or less general discussion of each point. As a preface, however, to such discussion we shall first briefly summarize the principal facts in evidence.

For over fifteen years before March 10, 1947 plaintiffs worked in the drawing room department of Alsace Division

of the Guerin Mills, Inc. in Woonsocket, hereinafter called the company. Upon reporting for work on that date they were discharged without notice solely on the demand of the Industrial Trades Union of America, hereinafter called the union. At that time the company was operating under a contract with the union which provided the employees with substantial economic benefits and required them to maintain membership in the union. Under the contract the company "checked off" the union dues of its employees and paid them to the union. After they had been discharged plaintiffs paid their dues at the office of the union. At no time either before or after March 10, 1947 were they ever in default. Indeed defendants admitted at the trial that plaintiffs were still members of the union, but claimed that they had been expelled from the Alsace Local branch of the union which consisted of the employees in the Alsace mill. That claim was based upon the result of certain proceedings initiated in the drawing room department and carried through the Alsace Local and the executive board of the union to the executive council of the union.

On February 2, 1947 a meeting of the workers in the drawing room department at which plaintiffs were present was held to hear and consider certain complaints brought against them by some of their fellow women workers. These complaints consisted of instances of personal friction mostly of a trivial nature, although in the minds of women working closely together they could have taken on an appearance of importance which they did not merit. In any event, whether real or fancied, these grievances were deemed by a substantial majority sufficient justification for adopting a motion expressing the sense of the meeting "that the workers of the Drawing Room Department don't want to work with Mrs. Josephine Proulx and Florence Savard any more because they cause a lot of trouble."

That expression of opinion was considered at a meeting of Alsace Local on February 9, 1947 at which plaintiffs were present. After hearing the same complaints, it was voted

by a small majority to approve the drawing room department workers' action. Defendant Omer Trudeau presided at this meeting and defendant Leo Laferte acted as secretary. Thereafter on February 28, 1947 the matter came before the executive board of the union and they approved the action of the local. On March 8, 1947 the executive council of the union reviewed the entire proceedings and sustained the executive board. Plaintiffs were present at those meetings and defendant Edwin Van Den Berghe, president general of the union, presided and defendant Raoul O. Vandal, secretary general of the union, acted as secretary.

The executive council is the supreme body of the union in the absence of a general meeting of all the locals which may be convened only upon the request of one third of the number of locals. Plaintiff mailed a written request for such a meeting to each local, but none was convened. The executive council's action was, therefore, final. Thereupon its officers caused the following letter to be sent to the company on the letterhead of the Industrial Trades Union of America:

"March 10, 1947

Guerin Mills Inc.
292 East School St.
Woonsocket, R. I.
Attention: John H. Lacouture, Pres-Treas.
Gentlemen:
This is to inform you that that Executive Council at its meeting of March 8th, 1947 has upheld the Local's and Executive Board's decision to expel Mrs. Josephine Proulx and Mrs. Florence Savard from the Alsace Local, on account of their conduct in the department.

Therefore, we are asking you to comply with the wishes of the majority of your employees and take necessary steps.

Very truly yours,
(signed) Raoul O. Vandal
Raoul O. Vandal
General Secretary"

Defendants admit that this was a demand upon the company to discharge the plaintiffs. It was so understood and acted upon by the company's officers. Although the vote of the drawing room department was in form merely an expression of opinion and as such was approved by the local, it was interpreted by the officers of the local and the officers of the union as a vote of expulsion of the plaintiffs from the local. The letter to the company was apparently drafted to accord with that interpretation. Bertram Paul, the company's superintendent, testified that the company's president-treasurer John H. Lacouture ordered him to comply with the letter and discharge the plaintiffs to avoid labor trouble. He further testified this was the sole reason why they were discharged and that in doing so the company was not exercising any right to discharge its employees as reserved in its contract with the union.

After they had been discharged plaintiffs tried, but without success, to obtain other employment suitable to their skills in the Woonsocket area. However, on August 25, 1947 Mrs. Proulx did secure a job at a lower wage rate in the Lorraine Mills at Pawtucket. Mrs. Savard never secured another job, and at the date of the trial, January 19, 1948, she was still unemployed. Each plaintiff claimed damages for loss of earnings, past and prospective, and for mental anguish and consequent physical suffering caused by the shame and embarrassment directly resulting from their discharge.

The declarations alleged that defendants had unlawfully and maliciously procured such discharge and thereby deprived the plaintiffs of substantial economic benefits which were expressly assured to them under the union's contract made on their behalf with the company. Under the plea of the general issue defendants tried to show that their action was lawful because it was impliedly authorized by the constitution and by-laws of the union; because it was an exercise of disciplinary or police power which the union was obliged to perform under its contract with the com-

pany; and moreover because it was in accord with a custom or usage of the union, supplementary to the procedure prescribed in the by-laws and well known to the plaintiffs.

The constitution and by-laws are in evidence as an exhibit. It appears from article XI thereof that jurisdiction over expulsion of members for causes specifically enumerated therein is expressly reserved to the executive council. And the procedure for exercising such jurisdiction is meticulously spelled out in a manner which unequivocally guarantees to each member the right to be informed in writing of the charges alleged against him; the right to notice of the time and place of hearing; the right to be therein represented by counsel and to present witnesses in his own behalf. It is undisputed that none of those guarantees were accorded the plaintiffs.

Under sec. 6 of the constitution the locals are vested with power to manage their own immediate affairs but there is no provision anywhere in either the constitution or the by-laws pertaining to expulsion by locals of their own members. There is, however, an express provision in the by-laws, article VI, sec. 6, authorizing locals "for such reason or cause that it may deem just and proper" to remove from service on the executive council any of their officers, delegates or alternates. In short, looking at the constitution and by-laws alone it appears that jurisdiction over the right of membership is vested exclusively in the executive council.

The contract with the company is also in evidence as an exhibit. It prescribes wage and working conditions of the employees, and sets out the mutual rights and obligations of the company and the union, but it does not provide that either the union or the local may demand the discharge of an employee because she has been found to be personally obnoxious to a majority of her fellow workers. Indeed it is clear from the contract that it is designed to govern solely the labor relations of the employees with the company and not at all the personal relations of the employees

with each other while engaged in their employments. Nor does it refer to the rights of the employees as members of a particular local but rather to their rights only as members of the union. Apparently the trial proceeded on the theory that whether the defendants had unlawfully interfered with the plaintiffs' right of employment was to be determined by the jury from the provisions, express or necessarily implied, of the constitution and by-laws and the contract.

Defendants did not agree with that theory and they repeatedly tried to introduce evidence that would permit the jury to go beyond the bounds set by the above documents. They sought to justify their treatment of the plaintiffs, wholly apart from any authority conferred therein, by showing that custom and usage of the union sanctioned the procedure which was followed in determining the complaints against the plaintiffs. They also tried to show that in any event the plaintiffs had waived their rights under the by-laws and acquiesced in such proceedings by participating therein without protest. Defendants, furthermore, wanted the jury to be permitted to consider evidence that complaints against the plaintiffs had been made from time to time to the superintendent of the company and that this could have played some part in so readily persuading it to discharge the plaintiffs aside from the union's demand therefor. Finally they tried to elicit from the defendant secretary-general while he was on the witness stand his interpretation of the powers of the local over maintenance of employment and over the rights of members of the union to retain their jobs. These efforts to broaden the theory on which the jury was to be allowed to determine the legality of the defendants' action in instigating plaintiffs' discharge were thwarted by timely objections which were sustained by the trial justice. Defendants' exceptions to those rulings and to numerous requests to charge the jury present almost all the questions we are required to determine under the series of points in defendants' briefs.

504

Under point I they have grouped exceptions 36 to 45 inclusive to the denial of ten specific requests to charge the jury in accordance with their theory of the issues which were open to the jury to determine. Summarized those requests were substantially to the effect that the right to retain a job was not a union membership right; that the procedural provision of the by-laws for expulsion of members from the union did not apply to these cases; that to recover plaintiffs must prove defendants acted maliciously, that is, without just cause; that employees have the right to decide whom they shall work for; that if the constitution and by-laws provide no procedure for procuring the discharge of a member from her job it was for the jury to determine whether the general powers of the executive council and the local were broad enough to imply such power; that if the defendants' action was in accord with custom and not in contravention of the by-laws it was proper; and that in passing upon the question of proper procedure they should disregard article XI of the by-laws pertaining to expulsion of members from the union as not applicable.

We are of the opinion that it was not prejudicial error to deny such requests. For the most part they are predicated upon a theory which had been repeatedly rejected by the trial justice during the trial by rulings excluding evidence which bore directly on the propositions in such requests. On the theory on which the cases were tried the jury could not properly be so charged without confusing them and in some instances contradicting the charge as given to which no exception was taken. The charge was predicated on the theory that the jury was to determine from the evidence whether the union, under its constitution and by-laws or its contract with the company, had the right to demand the discharge from their jobs of two members in good standing in the union, and that if so did the defendants act in accordance with lawful and proper procedure in the premises. The exceptions under this point are, therefore, overruled.

Points IV to VIII inclusive embrace exceptions to rulings on the admission of evidence which, if admitted, would have had a bearing on the question of defendants' liability to the plaintiffs. Under point IV, embracing exceptions 19 to 23 inclusive, 24, 27, and 30 to 34 inclusive, it is argued that the trial justice erred in excluding evidence tending to show the existence of a custom or usage of the union which would sanction what defendants had done. We think such evidence was properly excluded because the rights of the plaintiffs to membership in the union and the benefits incident thereto are expressly set out in the by-laws; and the method for depriving them of such benefits by expelling them from the union is also set out. Where an organization has adopted an organic law to govern its relations with its subordinate bodies and with its members and has expressly prescribed a convenient, clear and reasonable method for expelling members from its rolls for just cause, there is no room for the assertion of an alternative method authorized by custom or usage.

The written constitution and by-laws are the best evidence of the legality or illegality of any act of expulsion of the plaintiffs. Under article XI of the by-laws the lawful method for such type of action is prescribed in clear and definite terms. Plaintiffs could not lawfully be deprived of the protection of such procedure. As members of the union employed in the Alsace Division it was not only their right but their duty to be enrolled in Alsace Local. No one working in Alsace mill could be a member of the union without enrolling in the local. Jurisdiction over membership was vested exclusively in the executive council. To permit the jury to find that the action of defendants could be justified by a custom or usage would in effect set at naught the solemn written law of the union. Such evidence could only lead the jury astray from the real issue and hence the trial justice correctly excluded it. The exceptions under this point are overruled.

Under point V defendants claimed the right to place before the jury the secretary-general's interpretation of sec. 6 of the union constitution vesting jurisdiction in the local over their own affairs subject to limitations in the by-laws. This point rests solely on exception 25 to the trial justice's ruling excluding such interpretation. There is no merit in this exception. The constitution speaks for itself. Section 6 needs no interpretation. It is explained by reference to the by-laws. Thereunder the executive council and not the local is quite clearly vested with jurisdiction over membership in the union and this necessarily includes membership in the local. This exception is overruled.

Defendants complain under point VI that they were prevented from introducing evidence tending to show how serious were the grievances against the plaintiffs. This point embraces exceptions 20, 28 and 29. The nature of such grievances was unimportant unless defendants had complied with article XI of the by-laws and convened a competent tribunal to hear them, which they admitted they did not do. These exceptions are also overruled.

Under point VII, conceding the provisions of article XI were not followed, it is argued that it was proper to show by the testimony of plaintiffs themselves in cross-examination that they had participated without protest in the meetings at which the complaints against them had been heard and that they did not at any time insist upon their rights under article XI. Such testimony they claim would furnish a basis for the jury to find that they had waived their rights under article XI and had acquiesced in the purpose of the meetings. Exceptions 1, 2, 3, 4, 5, 6, and 19 are to rulings excluding such evidence. There was no error in such rulings. Plaintiffs had never been notified that such meetings were for the purpose of expelling them from the union and depriving them of their jobs. They had no notice that such was the object of the defendants nor was it at any time suggested to them that they could

be subject to expulsion as a final result of the meetings. It was the duty of the defendants to comply with article XI, without any suggestion from the plaintiffs, if the executive council was hearing charges against them that might lead to their expulsion. Of course if prior to this time it had appeared in evidence that plaintiffs had been so warned and thereafter failed to insist upon their rights there might be a question whether they had waived them. Since such was not the case the evidence sought to be elicited by the excluded questions was immaterial. The exceptions under this point are accordingly overruled.

Point VIII embraces exceptions 8, 9, 10, 11, 12, and 35 to rulings of the trial justice excluding evidence that prior to March 10, 1947 the company had received numerous complaints against the plaintiffs. Defendants contended that such evidence was admissible because it tended to show that the company had reason, apart from the demand of the union, for discharging the plaintiffs. They also contended it was relevant because it bore on the credibility of their witnesses who had testified to the trouble-making conduct of each plaintiff and because it was in rebuttal of the plaintiffs' testimony that they were peaceful workers. Whether the company had good reasons of its own for discharging plaintiffs is, we think, quite unimportant since the only question for the jury to determine was whether the union's demand for the plaintiffs' discharge, which defendants conceded was the sole cause of plaintiffs being deprived of their jobs, constituted an unlawful interference with their right of employment. What the company might have been justified in doing on its own account could be of no assistance to the jury in deciding the issue before them. Hence there is no merit in these exceptions and they are overruled.

Point IX is based on exceptions 7 to 18 inclusive and 26 that relate to the exclusion of evidence which defendants claim would have tended to minimize the damages. Exception 7 is to a ruling excusing plaintiff Proulx while on

the witness stand from answering a question containing a request that she bring into court a copy of the contract under which she was working in the Lorraine Mills. She had testified that it was a union shop. We fail to see the relevancy of that request. Certainly if the contract was important defendants should have produced a copy of it themselves. In any event we do not know whether the provisions of the contract were material and relevant or not as there was no offer of proof. This exception is, therefore, overruled.

Exceptions 13, 14, 15 and 16 referred to the exclusion of a similar line of interrogation while Mrs. Savard was testifying. There was even less ground for such interrogations in her case than there was in the case of Mrs. Proulx. The trial justice, therefore, did not err in those rulings and the exceptions thereto are overruled. Exceptions 17 and 18 were taken to rulings excluding two questions to Mrs. Savard concerning a Mrs. Miclette who had been discharged from Alsace mill and was hired by Textron, a mill whose employees were also organized in a unit of the union. We think these questions had no relevancy to the issue of damages in Mrs. Savard's case. Moreover, we have no means of knowing whether Mrs. Savard could have obtained employment at the Textron mill had she applied. Therefore the fact that there were other mills which offered similar union contract benefits was immaterial to the issue of Mrs. Savard's right to damages for loss of benefits to which she was actually entitled at the Alsace Division. In the circumstances the trial justice did not err in any of his rulings and the exceptions thereto under this point in defendants' brief are, therefore, overruled.

The remaining points II and III relate to the rulings of the trial justice on the several motions for a new trial by the plaintiffs and the defendants. Point II consists solely of exception 46 to the denial of defendants' motion. In support of that exception they contend that the trial justice disregarded substantially all the evidence in their favor;

that he curtly brushed it aside as unimportant and irrelevant; that he ignored the evidence of plaintiffs' conduct toward their fellow workers which tended to justify their removal from the ranks of Alsace Local; that he rested his ruling on the view that the evidence showed that if defendants intended to demand plaintiffs' discharge as of right "they should, first, have expelled them from the Union"; that such a view contradicts article M of the contract whereby the company may discharge any employee for just cause; that his construction of the by-laws is unsound; and that his view of the union's powers to police its membership is too narrow and not consistent with established principles pertaining to the freedom of voluntary associations to decide questions of discipline, doctrine and internal policy.

They further argue that the trial justice lost sight of the evidence that the union is the bargaining agent of its members and has the right and duty to see that the employees live up to their contractual obligations to the company. This last contention is expounded at considerable length in defendants' brief but summarized it amounts to this: if it was not lawful for the union to discipline plaintiffs in the manner it did then it has neither the right nor the power to compel its members to live up to the obligations of the bargaining agreements which it has entered into with the company for their benefit.

The above contentions and especially the last one forcibly illustrate the totally different conception of this controversy which defendants entertain from that advanced by the plaintiffs and adopted by the trial justice. There is no evidence here that plaintiffs failed to perform fully their obligations to the company under the contract. There is no evidence that their discharge was due even in part to the exercise by the company of any right reserved to it under article M of the contract. Indeed the evidence is undisputed to the contrary. Moreover the very complaints against the plaintiffs upon which the

defendants rely for justification of their action were not violations of the contract but purely personal grievances of plaintiffs' fellow workers. Of course the union has the power and authority to decide questions of internal policy and discipline but in exercising such power of discipline the accused member has the right to insist that it be exercised in accordance with the organic law of the union which has been adopted among other things for the protection of the members against arbitrary action by their officers and fellow members.

In our opinion the trial justice did not lose sight of this fact or the fact that the union had the authority to enforce compliance by its members with their obligations to the company under the contract. Rather he found that no violations thereof were involved in these cases. As to the other contentions we think they are clearly without merit. The trial justice could scarcely have set aside the verdicts and granted defendants new trials for any of those reasons and yet be consistent with his rulings on the admission of evidence and the law which he gave to the jury in his charge. Exception 46 is overruled.

Under point III defendants argue that exception 47 to the granting of plaintiffs' motions for new trials should be sustained because the evidence does not warrant an increase in the damages, because the additurs are arbitrary in amount and because the granting of them is an invasion of the province of the jury. The last contention is clearly without merit as the statute expressly obligates the superior court to permit a defendant to consent to an additur before granting a plaintiff a new trial on the ground of inadequacy of the damages awarded by the jury. Public laws 1940, chapter 946, section 1. And of course the power of the superior court to grant a new trial solely on damages has always been recognized. *Clark* v. *New York, New Haven & Hartford R. R.*, 33 R. I. 83; *Sullivan* v. *White & Son, Inc.*, 36 R. I. 488; *Sayegh* v. *Davis*, 46 R. I. 375; *Riley* v. *Tsagarakis*, 53 R. I. 261; *Loughran* v. *McKenna*, 60 R. I. 453.

The only question is whether the evidence justifies any increase in the verdicts and if so whether it reasonably supports the additurs fixed by the trial justice. From our examination of the transcript we are satisfied that the jury's award of the same amount of damages to each plaintiff is incorrect and we are also of the opinion that the trial justice did not err in finding that such award was inadequate in each case. What each additur should be is not a matter of mere arithmetical computation. And, therefore, whether the amount fixed by the trial justice exceeded what is reasonably warranted by the evidence cannot be precisely computed by finding the total number of weeks of employment lost by the plaintiffs and multiplying it by the amount of the average weekly wage or by the weekly rate of wages enjoyed by the plaintiffs just before their unlawful discharge.

Besides that element of damages there was also to be considered the element of mental suffering caused by the shame and embarrassment which resulted from plaintiffs' discharge. Taking that element into consideration along with the element of actual pecuniary loss the trial justice has fixed an amount which we cannot say is clearly wrong. In considering the pecuniary loss it was proper for him to base each plaintiff's loss of wages on the weekly rate of wages just before her discharge and not on the average weekly wages which she actually earned in the year next preceding her discharge, as defendants now contend. Exception 47 is overruled.

All of the defendants' exceptions are overruled, and each case is remitted to the superior court for a new trial on damages only unless defendants shall within the period to be fixed by that court consent to the additur heretofore awarded by the trial justice.

*Joseph Mainelli*, for plaintiffs.

*Eugene L. Jalbert*, for defendants.