Henry Clay Greenberg, J.
The defendants, other than Trans Caribbean Airways, Inc., move pursuant to CPLR 3211 (subd. [a], par. 1) for an order dismissing the second, fourth, and fifth, causes contained in the amended complaint, and pursuant to CPLR 3211 (subd. [a], par. 7) for dismissal of the sixth and seventh causes. A crash on takeoff of a Mohawk flight occurred, on July 2,1963, and in August, 1963 the Civil Aeronautics Board conducted a hearing into the circumstances thereof. The second, fourth, and fifth causes are in defamation and arise out of matters occurring in the course of that hearing. The defendants contend that the maintenance of those causes is barred by reason of absolute privilege as such privilege is reflected in the documents attached to the complaint and in the record of those hearings. In any event, the merit of those causes in the light of the privilege as urged is properly before the court for determination upon the basis of this submission.
“ Privilege is founded on public policy ” (Bleecker v. Drury, 149 F. 2d 770, 771). The question is raised, therefore, whether *927 in the interest of that public policy Congress has endowed the Civil Aeronautics Board with judicial or legislative power or quasi-judicial or quasi-legislative character (Longo v. Tauriello, 201 Misc. 35). Plaintiff insists that the hearing was conducted only to make findings with respect to the accident and the circumstances thereof and the board has no judicial function. To support the contention, plaintiff refers to the Regulations of the Civil Aeronautics Board (Code of Fed. Reg., tit. 14) and more particularly to section 303.2. He emphazises the following portion thereof: “ It [accident aircraft hearing] is purely a fact-finding procedure, and there are no formal pleadings or issues and no adverse parties.” But the section also provides: ‘ ‘ Aircraft accident hearings are held by the Board as a part of the investigation of accidents involving aircraft in order to determine the facts, conditions and circumstances relating to each accident and the probable cause thereof and to ascertain measures which %oill best tend to prevent similar accidents in the future.” (Italics added.)
The board has the power of subpeena with resultant contempt for failure of obedience. It has other incidents of a quasi-judicial and quasi-legislative body. The Report of the Committee on Interstate and Foreign Commerce of the Congress on the Federal Aviation Act of 1958 (2 U. S. Code Cong. & Admin. News, pp. 3741-3772, 1958), in referring to the intent of Congress and the history of the Civil Aeronautics Board, declares: “ The Civil Aeronautics Authority never had a chance to succeed. Less than 2 years after its establishment, the agency was split into two segments by Reorganization Plans III and IV of 1940. The five-man Board became the Civil Aeronautics Board, retaining quasi-legislative and quasi-judicial powers of the Authority, and assuming the function of the Air Safety Board, which was abolished ” (p. 3743).
In Alagna v. New York & Cuba Mail S. S. Co. (155 Misc. 796) the Federal Radio Commission was involved. There a letter written to the commission was considered a complaint and as such was found to enjoy absolute privilege. The court stated (p. 797): “ Public policy would seem to dictate such a holding.”
Plaintiff relies on Ellish v. Goldman (117 N. Y. S. 2d 867) where the basic question determined was whether it was the intent of pertinent legislation that the subject Zoning Board of Appeals was administrative or judicial, and plaintiff asserts that in that case the Alagna case (supra), was not cited. This, of course, only evidences the distinction between those cases, Alagna proceeding upon the basis of a body having judicial or *928 legislative function as a matter of public policy (see, also, Bleecker v. Drury (149 F. 2d 770; Matter of Kearney, 227 F. Supp. 174). It cannot be doubted that it is a matter of high public policy that there should be no impediment to the disclosure of facts and knowledge before the Civil Aeronautics Board, and that its power, including accident hearings, is quasi-judicial or quasi-legislative. More particularly, a hearing of the kind here involved is manifestly integrated in the legislative process in an area of considerable public concern and import. It follows that in all matters before it and with respect to all persons appearing before it, the protective umbrella of the privilege is essential, and the indicated intent of the Congress in creating the board and conferring its powers upon it support that conclusion. Accordingly, the second, fourth and fifth causes are not maintainable.
The sixth cause is asserted against the defendant Mohawk alone. Therein it is alleged that the defendant maliciously published the false statements set forth in Exhibits A and B, upon which are founded the second, fourth, and fifth causes, and other similar malicious publications of false statements and information, oral or written or both, concerning the plaintiff, the precise nature thereof not presently known to the plaintiff, in response to requests for references and recommendations by prospective employers of the plaintiff. All such statements and publications, it is alleged, were malicious and intentionally designed to interfere with plaintiff’s right to employment and to prevent plaintiff from further employment in the airline industry. It is clear, therefore, that plaintiff intends by the sixth cause to allege wrongful interference with employment and employment prospects. The conclusions reached with respect to the second, fourth, and fifth causes do not require and are not required to embrace any finding of the truth or falsity of the statements. It is not their alleged libelous character which has been adjudged. Such statements could form, the basis of claim of wrongful means to achieve an interference with employment. Accordingly, the defendant has been sufficiently apprised of the nature of the sixth cause of action, and. the plaintiff should be permitted to maintain it.
The seventh cause is asserted against the defendant Mohawk, its president the defendant Peach, and the defendant Trans Caribbean Airways, Inc. Therein it is alleged that subsequent to the publications embodied in Exhibits A and B, made a part of the second, fourth and fifth causes, and other, statements and other utterances, presently unknown to the plaintiff, he applied for employment with the defendant Trans Caribbean and was *929 refused. It is further alleged, upon information and belief, that such refusal was the result of a joint undertaking and conspiracy among the defendants to injure the plaintiff and to bar him permanently from employment in the aviation industry by any air carrier, by false accusation in order to silence the true facts of the crash of July 2, 1963, which, if fully disclosed, would embarrass the defendant Mohawk and the air carrier industry. Sufficient is set forth to inform the defendants of the claimed grievance of conspiracy to achieve the purpose of depriving plaintiff of employment in the industry by wrongful means.
The motion is directed to the sixth and seventh causes and their claimed insufficiency on the face thereof. With respect to the seventh cause, the defendants undertake to establish the claimed fact that there was no connection whatever between the defendant corporations and their personnel, and that the refusal of the defendant Trans Caribbean to employ the plaintiff was a conclusion independently reached and, in fact, was not a refusal to employ but, rather, a failure to employ because there was no opening at the time. As to both causes, plaintiff is entitled to maintain them and to procure a discovery to support them.
The motion is granted dismissing the second, fourth and fifth causes, and it is otherwise denied.