Lawrence J. SCHWAB, Appellant-Appellee,

v.

INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL & ORNAMENTAL IRON WORKERS, AFL–CIO, LOCAL NO. 782 et al., Appellants-Appellees.

Court of Appeals of Tennessee, Western Section.

March 2, 1972.

Certiorari Denied by Supreme Court June 5, 1972.

Anthony J. Sabella, Memphis, J. Howell Glover, Union City, for plaintiff in error.

Goheen, Schultz & Yaffe, Paducah, Heathcock & Cloys, Union City, for defendants in error.

MATHERNE, Judge.

The plaintiff Lawrence J. Schwab sued for damages resulting from the malicious conduct of the defendants which caused plaintiff's employer to discharge the plaintiff from his employment. The named defendants are International Association of Bridge, Structural and Ornamental Iron Workers, AFL–CIO (hereinafter referred to as International); Local 782 of the International (hereinafter referred to as Local); and Wayne Larrison, individually and as agent for the Local.

At the conclusion of the plaintiff's proof the Trial Judge directed a verdict in favor of the International; the cause went to the jury as against the other two defendants. The jury returned a verdict for the plaintiff in the amount of $35,000.00. On motion for a new trial the Trial Judge suggested a remittitur of $10,000.00, which was accepted by the plaintiff under protest.

The Local raises two issues on appeal: (1) There is no material evidence to sustain the verdict, and (2) The verdict is excessive, and is so excessive as to indicate passion, prejudice and unaccountable caprice on the part of the jury.

The plaintiff on appeal raises the following issues: (1) The Trial Judge erred in excluding certain testimony of the plaintiff relative to statements made to him by the business agent of Local 290 of Dayton; (2) The Court erred in refusing to admit into evidence the Constitution and By-Laws of the International; (3) The Court

erred in directing a verdict in favor of the International; and (4) The Court erred in suggesting a remittitur of $10,000.00.

The defendant Local filed a motion to dismiss the plaintiff's appeal in error because the plaintiff did not perfect and file a bill of exceptions within the time allowed by law; and the plaintiff did not file its assignments of error and brief within the time required by the Rules of this Court. The record reveals a complete bill of exceptions filed by the Local within the time allowed by law. That record does not belong to either party, but is equally available to both parties, whether on appeal in error or on writ of error. Waller v. Skeleton (1948) 31 Tenn.App. 103, 212 S. W.2d 690; Davidson v. Burger (1952) 36 Tenn.App. 486, 259 S.W.2d 541. The plaintiff can therefore assign errors on his appeal in error based upon the bill of exceptions filed. The plaintiff's attorney, Mr. Sabella, filed an affidavit in this Court that he was associated by attorney John Hart of Union City, who is now deceased; that attorney J. Howell Glover of Union City replaced Mr. Hart, and through a misunderstanding between Mr. Glover and Mr. Sabella as to which would file the assignments of error, the time for filing was inadvertently allowed to expire. We will accept that explanation and treat the time for filing assignments of error, brief and argument by the plaintiff as extended to the date of filing. The motion to dismiss the plaintiff's appeal in error is overruled.

It is established in this State that every man has the right of property in his own labor, and the right to work without interference; and whoever intentionally interferes with this right is liable in tort for the damages caused, unless he can show a privilege or justification for such interference. Dukes v. Brotherhood of Painters, Decorators and Paperhangers of America, Local No. 437, et al (1950) 191 Tenn. 495, 235 S.W.2d 7; Large v. Dick (1960) 207 Tenn. 664, 343 S.W.2d 693. We further hold the fact the employment is for no stipulated period of time but may be ended at the will of the employer or the employee is of no consequence, because such a right to terminate by the parties does not render the employment subject to the will of others. See: Hill Grocery Co. v. Carroll (1931) 223 Ala. 376, 136 So. 789; Architectural Mfg. Co. of America v. Airotec, Inc. (1969) 119 Ga.App. 245, 166 S.E.2d 744. The form of an action at common law for malicious interference with a person's employment has probably been most accurately designated as trespass on the case. See: Savard v. Industrial Trades Union of America (1950) 76 R.I. 496, 72 A.2d 660.

The record reveals the plaintiff is a member in good standing of the International, plaintiff's home local being No. 678 of Lake Charles, Louisiana. The plaintiff was sent on a shipping letter signed by Mobley and Speed Cement Contractors to the Goodyear Tire and Rubber Company plant being constructed in Union City, Tennessee, to be a foreman for Mobley and Speed under its sub-contract to lay wire mesh and pour concrete for the floors of the Goodyear plant. This shipping letter under the custom of the trade was delivered to the defendant Wayne Larrison, the business agent for Local 782 of Paducah, Kentucky, it being the local out of which workers for the Goodyear plant would be obtained. Larrison and the plaintiff agreed on the number of workers the Local would supply for the particular job, which appears to have been six men.

According to the record the rules of the Local and the International require a foreman and a job steward on each job where union members work. The job steward is one of the workers and it is his duty to take up with the foreman any complaints of the workers. The job steward on this Mobley and Speed job was Julian Woods. The Local had the complete say as to what men worked on the job, and who was the job steward. The foreman was not sup-

posed to do any work which was normally the duty of the workers or journeymen. The plaintiff foremen had immediate charge of the job; he supervised the work; saw that it was accomplished according to specifications; kept the time record of the men working under him; and was responsible to the field superintendent, B. J. Watkins, who in turn was responsible to the general superintendent of Mobley and Speed, B. M. Housewright, of Dallas, Texas.

There is material evidence to sustain a finding that the workers under the plaintiff made complaints to the job steward that the plaintiff shorted them on time worked; he did on occasion do work which was the duty of the workers; he worked them too many hours in one day on several occasions; and, he screamed at them while they were working. The job steward took these matters up with the plaintiff, and also with Mr. Watkins. There is no proof in the record of an actual shorting of time by the plaintiff; the errors were apparently committed by the time keeper to whom the plaintiff delivered the time book once a week; these errors were corrected. There were two proven minor violations of the regulation which prohibited the plaintiff from doing any work, which appear to be insignificant; the work did progress for long hours on certain days because of the necessity to complete a "pour" once it was started, but the hours worked without stopping were within the maximum number of hours the men agreed to work in any one day; the screaming charge did not cause any fright or apprehension on the part of the workers; there was on one occasion a failure to have drinking water available when a worker wanted a drink of water. These complaints do not, under the record, justify an interference with the plaintiff's right to work.

The record reveals conflicting evidence on whether the plaintiff did or did not consume alcohol on the premises of the job. The plaintiff admitted bringing each worker one bottle of beer one night with their supper while they were working overtime. The plaintiff's superior denied that plaintiff drank on the job, and rated him as an efficient and desirable foreman. There is material evidence from which the jury could conclude that the Local's charge that the plaintiff drank alcohol on the job was unfounded as a reason or justification for the Local's interference with the plaintiff's right to work.

The record reveals Julian Woods the shop steward felt strongly about the regulations under which he and his men, members of the International, worked, and did jealously guard those rights. The record also reveals the plaintiff was a competent, hard working, get-the-job-done type of foreman, which probably resulted in his having been employed by Mobley and Speed in that capacity throughout the south and southeast. It is not unusual that these two men had various complaints about each other.

■ There is material evidence that on Friday, October 11, 1968, some conversation took place between the plaintiff and Julian Woods concerning an error in the workers' checks. The plaintiff testified Woods told him he, Woods, was quitting and he wanted his check. The plaintiff got Woods' check for time worked, and Woods left the job. The plaintiff left the job that morning to go to his home for the weekend. The job superintendent Watkins left the job at about 2:30 p. m. to go to his home. Woods testified that he did not quit but just went to the Local's hall on business. That testimony is contradicted by the fact he did receive his checks as on a termination. Woods was told by the Local's assistant business agent to return to the job; he did return to the job, and worked that weekend without permission from Watkins. The plaintiff and Watkins testified that when Watkins returned to the job on Monday morning, Watkins discharged Woods and paid him for work done that weekend. The testimony conflicts as to whether Woods told the other

men to quit upon his being fired, but the fact is established they did all quit and go to the Local's hall in Paducah.

Mr. Watkins telephoned the defendant Larrison at the Local's hall and requested the job be manned immediately. Watkins stated he was told by Larrison that if the plaintiff was fired everybody would be a lot happier, and informed him that nobody was going to fire one of his stewards. Watkins notified his superior Mr. Housewright who flew to the job from Dallas, Texas. Mr Housewright testified that the defendant Larrison told him that Julian Woods was the only job steward they would have unless they fired the plaintiff; that if the plaintiff was discharged, Mr. Woods would be removed and the job re-manned, otherwise the job would not be manned. Mr. Housewright stated that the plaintiff was discharged from his job "in order to get Mr. Larrison to reman the job; Mr. Larrison stated this was the condition under which he would reman the job."

The record establishes the plaintiff averaged $600.00 per week on the Good-year job. The Mobley and Speed portion of the Goodyear job was completed in January, 1969. It is also established the plaintiff worked regularly prior to the present discharge and he averaged $500.00 to $600.00 per week on Mobley and Speed jobs prior to the Goodyear job. The plaintiff was off work for five weeks after his discharge. Plaintiff then obtained a job as foreman through his local 290 at Dayton with Baystone Construction Company; that employer did, however, specifically request the assignment of plaintiff to it as foreman. Plaintiff worked for Baystone about six to eight weeks. Local 290 sent him as a laborer with Metal Builders for four or five weeks; and, sent him to Daley Construction Company as a laborer for two weeks, that job being his last job until the date of trial, December 16, 1970. The plaintiff testified his Local No. 290 of Dayton had not assigned him to a job since he filed the present lawsuit on May 2,

1969. The plaintiff testified he has lost not only wages, but also other benefits such as pension rights and insurance. The record clearly reveals the only way a person in plaintiff's avocation, and a member of the International, can obtain employment is by, through, or with the consent of a Local of the International. The record clearly reveals the plaintiff has lost his standing with his union, and there is material evidence upon which the jury could find the plaintiff "black-balled" from employment.

There is ample material evidence from which the jury could conclude that the defendant Local, acting through its business agent Larrison, did maliciously interfere with the employment of the plaintiff and thereby cause him to be discharged. The Local's first assignment of error is overruled.

The second question on appeal by the Local raises the issue of the proper elements of damage in lawsuits of this nature. In the *Dukes* case, supra, the trial judge had sustained a demurrer to the declaration. On review, the Supreme Court held the declaration did not state a cause of action for slander, but it did allege a cause of action for damages because the defendants unlawfully procured the discharge of the plaintiff, and remanded for trial. In its opinion, the Supreme Court made the following statement as to the measure of damages:

"We think that a fair statement as to the measure of damages under the situation here presented is: 'The measure of damages for unlawfully procuring the discharge of an employee is based on the direct and proximate results of the wrongful acts of the defendant and not on the breach of the contract of employment, and ordinarily plaintiff may recover the amount which would have been earned by him except for defendant's interference, less such sums as were actually earned at other employments.' 57 C.J.S. Master and Servant § 632, p. 439."

The Local on appeal claims damages must be limited to the work lost by the plaintiff on the Goodyear job only; the plaintiff is not entitled to punitive damages; and the amount as remitted is excessive. The plaintiff insists he is entitled to relief for all work lost because of the unlawful interference; future as well as past earnings are at issue; he is entitled to punitive damages; and the court erred in suggesting the remittitur. We will review these conflicting contentions in the light of the foregoing definition of the measure of damages as set out in the *Dukes* case, supra.

■ We hold punitive damages may be awarded aginst a party who maliciously induces an employer to discharge an employee; and punitive damages are contemplated in the measure of damages as stated in the *Dukes* case. See: Wyeman v. Deady (1906) 79 Conn. 414, 65 A. 129; Cotton v. Cooper (Tex.Com.App. 1919) 209 S.W. 135; Clarkson v. Laiblan (1919) 202 Mo.App. 682, 216 S.W. 1029; United States Fidelity & Guaranty Co. v. Millonas (1921) 206 Ala. 147, 89 So. 732; Hill Grocery Co. v. Carroll, supra; Brotherhood of Locomotive Firemen and Enginemen v. Hammett (1962) 273 Ala. 397, 140 So.2d 832.

■ Punitive damages are not based upon the nature and extent of the injury inflicted so much as upon the oppression exercised by the party who does the injury, and the basis therefor is not compensation for special injury, but is punishment for the *mala fides* of the party doing the injury. Louisville & N. R. Co. v. Ray (1898) 101 Tenn. 1, 46 S.W. 554. It has therefore been held that it is necessary to set out in the declaration the facts constituting fraud, malice, oppression, etc., upon which the claim for punitive damages is to be predicated; it is not necessary, however, that in so many words some of the damages claimed be stated as exemplary or punitive. Louisville & N. R. Co. v. Ray, supra; Allen v. Melton (1936) 20 Tenn.App. 387, 99 S.W.2d 219.

■ The declaration alleged the plaintiff faithfully performed his duties as foreman and as a member of the International, but the Local through its agent Larrison, did willfully, maliciously, and intentionally cause the employer to terminate plaintiff's employment by informing the employer the Local would not man the job unless the plaintiff was discharged as foreman, and the only source of manpower for the job was through the Local. We hold these allegations would justify an award of punitive damages, if substantiated by the proof. The Trial Judge did not charge the jury on punitive damages, and the plaintiff made no special request therefor. We therefore conclude the plaintiff cannot now complain.

■ We further hold, where the damages are of a continuing nature, the employee is not confined to damages which have accrued up to the institution of suit, or even up to the date of the trial, but future as well as past damages may be proven. See: Hanson v. Innis (1912) 211 Mass. 301, 97 N.E. 756; Loudin v. Mohawk Airlines, Inc. (1964) 44 Misc.2d 926, 255 N.Y.S.2d 302. The proof in this lawsuit is such that the jury could find the damages continuous in nature, and that the plaintiff has been unable to work due to the acts alleged, since the filing of this lawsuit. In an action in tort for damages, "based on the direct and proximate results of the wrongful acts of the defendant" (*Dukes* case), the normal interpretation of those words would include damages which could foreseeably result from such wrongful action. The action proved in this record smacks of revenge rather than the legitimate protection of the economic interests of the union; the jury could find the Local acted out of spite and singled the plaintiff out and acted so as to deny him employment which other union members were allowed to obtain. This conduct where found is maliciously oppressive, and is actionable. See and compare: Barile v. Fisher (1949) 197 Misc. 493, 94 N.Y.S.2d 346; Brotherhood of Loc. Fire. and Eng.

v. Hammett, supra; Savard v. Industrial Trades Union of America, supra.

The definition of the measure of damages in *Dukes*, supra, would not permit the application of the New York rule to the effect there is no duty on the part of a person who has been deprived of his contract of employment by the intentional wrong of another to minimize the damages to the wrongdoer by entering upon other employment. See: Hayes v. Utica Mut. Ins. Co. (1965) 24 A.D.2d 829, 264 N.Y.S.2d 142; Carmen v. Fox Film Corp. (1923) 204 App.Div. 776, 198 N.Y.S. 766. The Trial Judge properly charged the jury in the instant case on the plaintiff's duty to minimize damages, and the consideration to be given the amounts received from other employment. Neither the Local nor the plaintiff has a legitimate complaint in this respect.

■ We further hold that where the conduct of the defendant in causing a breach by the employer of the employee's contract to work is not only wrongful, but is also malicious and oppressive, the plaintiff may, in addition to other damages, recover for mental suffering occasioned thereby. Carter v. Oster (1908) 134 Mo. App. 146, 112 S.W. 995; United States Fidelity & Guaranty Co. v. Millonas, supra; Hill Grocery Co. v. Carroll, supra; Lopes v. Connolly (1912) 210 Mass. 487, 97 N.E. 80; Savard v. Industrial Trades Union of America, supra. The record in this cause would justify a finding of mental suffering, and damages therefor.

■ In summary we conclude there is no reversible error in the record as pertains to the amount of the verdict as remitted by the Trial Judge. There is no fixed rule by which unliquidated damages may be determined. The finding by the jury, as reduced by the Trial Judge demands great weight by this Court. We hold from the record the amount of $25,000.00 is within the proof adduced, is reasonable, does not in any manner shock the conscience of the Court, and is affirmed. All assignments by both appealing parties directed to the amount of the judgment are overruled.

■ On the issue of the directed verdict in favor of the International, we find no error under the record. Under the authorities herein cited, we hold an international may be held liable for maliciously depriving an employee of further employment, even though the local is not so liable. See and compare: Brotherhood of Loc. Fire. & Eng. v. Hammett, supra; Savard v. Industrial Trades Union of America, supra. Under the record in the instant case, however, there is a total failure on the part of the plaintiff to prove a plan, scheme, conspiracy, or course of action on the part of the International which would justify a judgment against it; niether is there any proof of duties owed by the International.

■ The plaintiff offered a copy of an outdated constitution and by-laws of the International which was properly rejected by the Trial Judge. The plaintiff offered to testify as to a statement by the business agent of Local 290 of Dayton to the plaintiff that plaintiff would never get work through that Local unless this lawsuit was dismissed. That statement was properly excluded by the Trial Judge under the record as presented. The plaintiff did prove he paid dues to the International, but he failed to prove that to which he may have been entitled from that body by virtue of the payment of dues to it. Under this record any liability found on the part of the International would have of necessity been based on mere surmise, conjecture, and speculation. All assignments of error by the plaintiff relating to the rejection of evidence, and the directed verdict in favor of the International are overruled.

It results all assignmnts of error of all appealing parties are overruled and the judgment of the Trial Court is affirmed. The cost of this appeal is adjudged one-half against each appealing party, for which let execution issue.

CARNEY, P. J., and NEARN, J., concur.